*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0025p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

SHARON SURLES, by next friend Jayneice Johnson,
*Plaintiff-Appellee/*
*Cross-Appellant,*

v.

GREYHOUND LINES, INC.,

*Defendant-Appellant/*
*Cross-Appellee.*

Nos. 05-6713/6743

---

Appeal from the United States District Court
for the Eastern District of Tennessee at Winchester.
No. 01-00107—Bruce Guyton, Magistrate Judge.

Argued: December 5, 2006

Decided and Filed: January 18, 2007

Before: MOORE and CLAY, Circuit Judges; BELL, Chief District Judge.[*]

---

## COUNSEL

**ARGUED:** Kent L. Jones, SUTHERLAND ASBILL & BRENNAN, Washington, D.C., for Appellant. Andrew L. Berke, BERKE, BERKE & BERKE, Chattanooga, Tennessee, for Appellee. **ON BRIEF:** John W. Bonds, Jr., SUTHERLAND ASBILL & BRENNAN, Atlanta, Georgia, for Appellant. Andrew L. Berke, BERKE, BERKE & BERKE, Chattanooga, Tennessee, Jodi J. Aamodt, JACOBS, MANUAL & KAIN, Baton Rouge, Louisiana, for Appellee.

---

## OPINION

---

CLAY, Circuit Judge. Defendant, Greyhound Lines, Inc., appeals from the district court's judgment awarding $8 million in compensatory damages to Plaintiff, Sharon Surles, for injuries sustained while a passenger on one of Defendant's buses. Plaintiff cross appeals from the district court's orders limiting discovery and granting in part Defendant's motion *in limine* to limit the admissibility of prior incident reports. For the reasons that follow, we **AFFIRM** the district court in all respects.

---

[*]The Honorable Robert Holmes Bell, Chief United States District Judge for the Western District of Michigan, sitting by designation.

## BACKGROUND

### A.      Substantive Facts

On October 3, 2001, Plaintiff was traveling aboard one of Defendant's buses from Michigan to Georgia.  Also aboard the bus, passenger Damir Igric ("Igric") behaved suspiciously, and the bus driver, Garfield Sands ("Sands"), took notice.  The bus made a routine stop in Horse Cave, Kentucky, and from there continued toward Manchester, Tennessee.  During this leg of the journey, Igric began walking "back and forth up to the front of the bus," asking the driver when the bus would stop next every fifteen to twenty minutes or so. (J.A. at 984)  The bus did not have an entry-resistant barrier next to the driver's seat.

Sands was driving the bus at an approximate speed of 65 to 70 miles per hour when, without warning, Igric attacked him from behind with a box cutter, slitting the driver's throat.  Igric then grabbed the steering wheel.  Although Sands struggled to maintain control of the bus and fought with Igric to regain the wheel, Igric "jumped down over the steering wheel and put his whole body over the steering wheel, covering it . . . trying to get [the bus] over into the median." (J.A. at 993)  Sands finally managed to push Igric away from the wheel, but lost control of the bus in the process.  The bus careened off the road into a ditch.  Sands survived both the attack and the crash and, exiting the bus, attempted to get help from drivers passing by.  Plaintiff sustained permanent injuries to her spinal cord in the crash, which left her a paraplegic.  Igric did not survive.

### B.      Procedural Facts

On November 1, 2001, Plaintiff brought a diversity suit in U.S. District Court to recover for personal injuries sustained in the accident.  During discovery, Plaintiff served Defendant with a Request for Production of "any and all documents and/or incident reports generated as a result of any other violent episodes which have occurred on a Greyhound bus since 1975," as well as "all memoranda or other notes of the defendant which concerns [sic] terrorist activity, criminal conduct, unruly passengers or decorum or conduct on buses," among other things. (J.A. at 69-71)  Plaintiff later brought a motion to compel production.  In an order dated December 20, 2002, the district court narrowed the scope of Plaintiff's requests and, as to the remaining objectionable requests, directed Defendant to specifically set forth the degree of the burden imposed at a later time.  Defendant later made this showing and, on May 13, 2004, the district court further limited Plaintiff's requests.

Following the completion of discovery, on July 12, 2005, Defendant filed a motion *in limine* to exclude evidence of prior incidents on its buses, arguing they "lack the requisite substantial similarity to be admissible." (J.A. at 482)  The district court granted in part and denied in part Defendant's motion, providing for the admissibility of incident reports for incidents (1) occurring between October 3, 1997 and October 3, 2001, which (2) "involved a passenger assaulting or attempting to assault the driver or grabbing or attempting to grab the driver, the steering wheel or the brakes," (3) on a moving bus. (J.A. at 714-15)  Pursuant to the district court's order, Plaintiff introduced reports of forty-two incidents on Defendant's buses.

Additionally, on July 22, 2005, Defendant filed motions *in limine* to exclude the opinions and testimony of Plaintiff's proffered expert witnesses under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  The district court granted the motions only insofar as it barred expert testimony on the foreseeability of the attack, but denied the motions in all other respects, on August 1, 2005.

At trial, Defendant elicited testimony on cross-examination from Plaintiff's expert, Lance Watt, that no local, state, or federal regulation required "driver's shields enclosures" in passenger buses, and that no commercial bus lines had installed driver's shields as of October 2001. (J.A. at

1033) On this basis, Defendant requested a jury instruction on state of the art principles. The district court declined to so instruct the jury.

At the close of trial, which lasted seven days, the jury found for Plaintiff, holding Defendant liable in negligence and awarding $8 million in compensatory damages, with no award of punitive damages. Defendant moved for judgment as a matter of law, arguing that Plaintiff failed to present sufficient evidence of causation. Alternatively, Defendant also moved for a new trial on the asserted basis that the district court improperly admitted the prior incident reports, improperly allowed expert testimony, and that Plaintiff's counsel made improper closing remarks on which the court should have instructed the jury. The district court denied both Defendant's motion for judgment as a matter of law, and for a new trial, on September 28, 2005.

Defendant timely appealed to this Court and raises several challenges on appeal. Specifically, Defendant asserts that the district court abused its discretion (1) in admitting Plaintiff's proffered experts as qualified and finding their testimony reliable, (2) in admitting prior incident reports into evidence, (3) in declining to instruct the jury on state of the art principles, and (4) in denying its motion for mistrial. Defendant further alleges the district court erred in denying its motion for judgment as a matter of law. Plaintiff cross-appealed, charging that the district court abused its discretion in limiting the scope of discovery and in granting in part Defendant's motion *in limine* to limit the admissibility of the prior incident reports. Plaintiff further seeks remand and retrial on the issue of punitive damages, which Plaintiff believes would follow from introduction of the additional prior incident reports to show recklessness.

## DISCUSSION

## I. PLAINTIFF'S PROFFERED EXPERTS

### A. Standard of Review

We review a district court's decision to admit expert testimony, including its "decisions about how to determine reliability" and "its ultimate conclusion," for abuse of discretion. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *JGR, Inc. v. Thomasville Furniture Indus.*, 370 F.3d 519, 524 (6th Cir. 2004). In so doing, we reverse only where the district court renders a manifestly erroneous ruling. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997); *see also Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768, 781 (6th Cir. 2002) (finding abuse of discretion where the court is "left with a definite and firm conviction that [the district court] committed a clear error of judgment").

### B. Expert Testimony: Qualifications and Reliability

Defendant brought motions *in limine* to prevent Plaintiff's proffered experts from testifying at trial. The district court granted Defendant's motion *in limine* insofar as it excluded expert testimony on the foreseeability of the October 1, 2001 incident, but otherwise denied the motions, finding that Plaintiff's experts were qualified to proffer testimony and that their testimony was reliable. Defendant argues that the district court "failed to properly apply the *Daubert* framework to the qualifications of Plaintiff's proffered experts and the reliability of their testimony" and thereby "abandoned its *Daubert* gatekeeping role." (Def.'s Br. at 18) We disagree.

#### 1. *Qualification of Experts*

The Federal Rules of Evidence provide that expert witnesses may only testify where that testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. As a threshold matter, expert witnesses must be qualified to testify to a matter

relevant to the case, and a proffering party can qualify their expert with reference to his "knowledge, skill, experience, training or education." *Id.*

The district court did not abuse its discretion in finding Plaintiff's expert witnesses, Robert Martin ("Martin") and Lance Watt ("Watt"), qualified. Martin boasted a law enforcement background, having worked twenty-eight years with the Los Angeles Police Department. In his later years on the force, Martin founded a threat management unit which, among other things, "dealt with . . . managing violently inclined situations of the mentally ill." (J.A. at 906) Now the Vice-President of a consulting firm, Martin has worked with clients in the transportation industry on threat assessment issues, and has overseen the design of threat assessment systems. In his work in the transportation field, he trained employees on "interpersonal human aggression and managing violently inclined employees." (J.A. at 953) Although Martin does not have threat assessment experience in the bus industry, the district court qualified Martin as an expert in threat assessment.

We cannot say with "definite and firm conviction" that the district court "committed a clear error of judgment" in evaluating Martin's qualifications to testify as an expert. *See Conwood*, 290 F.3d at 781. While not specific to the bus industry, Martin's background and experience leaves him well-positioned to "assist the trier of fact" to make sense of the prior incident reports from the perspective of a specialist in threat assessment. Martin's general experience further enables him to evaluate the sufficiency of Defendant's driver training. It is of little consequence to questions of admissibility that Martin lacked expertise in the very specialized area of commercial bus line threat assessment. *See First Tenn. Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319, 333 (6th Cir. 2001) (noting the plaintiff's "unduly narrow approach to defining the central issue at trial" and unfamiliarity with some specific aspects of the subject at hand "merely affected the weight and credibility of [the] testimony, not its admissibility"); *see also Smith v. BMW N. Am., Inc.*, 308 F.3d 913, 919 (8th Cir. 2002) (finding abuse of discretion where the district court *excluded* testimony of an expert witness qualified in a general field merely because that witness lacked expertise more specialized and more directly related to the issue at hand).

Defendant also challenges the qualifications of Plaintiff's second proffered expert. Employed as a forensic engineer, Watt received his educational training in a six-year mechanical engineering program. His work experience included time in the transportation sector generally, with a specific focus on buses for a period of several years. In fact, sometime in the early 1990's, Watt designed an "entry-resistant barrier to protect bus drivers from attacks by passengers." (J.A. at 1029-30) At trial, the district judge qualified Watt as a "[b]us and heavy truck engineer." (J.A. at 1029) In view of Watt's background and experience – especially considering his personal role in designing an entry-resistant barrier to prevent passenger attacks of bus drivers – the district court did not abuse its discretion in qualifying Watt.

### 2.        *Reliability under* Daubert *and its progeny*

We further find that the district court did not abuse its discretion in discharging its *Daubert* "gatekeeping" function. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993), the Supreme Court held that scientific evidence proffered by an expert must be "relevant to the task at hand" and must rest "on a reliable foundation." The Supreme Court subsequently affirmed that *Daubert*'s principles apply more generally to all expert testimony admissible under Rule 702 in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148 (1999). The maxims set forth in *Daubert* and *Kumho Tire* have since been incorporated in Rule 702, which now permits qualified experts to proffer their expert opinions where

(1) the testimony is based upon sufficient facts or data,
(2) the testimony is the product of reliable principles and methods, and

(3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. In essence, *Daubert* and its progeny have placed the district courts in the role of "gatekeeper," charging them with evaluating the relevance and reliability of proffered expert testimony with heightened care. In discharging that role, district courts possess broad discretion to make admissibility determinations. *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000).

Defendant here challenges the district court's reliability determination. *Daubert* itself set forth a list of non-exhaustive factors to guide district courts in assessing reliability. *Daubert*, 509 U.S. at 593-94. However, district courts need not adhere to those enumerated factors, as "[t]he inquiry . . . is a flexible one." *Id*. at 594. Indeed, "the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire*, 526 U.S. at 142 (citing *Joiner*, 522 U.S. at 143). As this Court has observed, where non-scientific expert testimony is involved, "the [*Daubert*] factors may be pertinent," or "the relevant reliability concerns may focus upon personal knowledge or experience." *Barreto*, 268 F.3d at 335 (citing *Kumho Tire*, 526 U.S. at 150); *see also Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 470 (6th Cir. 2004). The gatekeeping inquiry is context-specific and "must be tied to the facts of a particular case." *Kumho Tire*, 526 U.S. at 150 (internal citations omitted).

At trial, Watt opined that the October 2001 attack on Defendant's driver could have been prevented if the bus had been equipped with an entry-resistant barrier. Watt further testified to the feasibility of designing such a barrier, as he himself had previously done. Martin rendered an opinion on the sufficiency of Defendant's risk management training for drivers, and further opined that the prior incidents suggested the need for a barrier between Defendant's drivers and its passengers. Plaintiff's experts did not offer "scientific" expert testimony; rather, their testimony constitutes "technical or other specialized knowledge." Fed. R. Evid. 702; *Barreto*, 268 F.3d at 332. In this context, the factors enumerated in *Daubert* cannot readily be applied to measure the reliability of such testimony. *See Kumho Tire*, 526 U.S. at 150; *Barreto*, 268 F.3d at 335.

Nevertheless, at the pretrial hearing on Defendant's motions *in limine*, the district court achieved its "fundamental objective . . . to ensure the reliability and relevancy of that testimony." *Barreto*, 268 F.3d at 335. First, it should be noted that the district court ruled that Martin and Watts could not proffer their opinions on the issue of foreseeability, noting that "anybody can give the opinion that it's foreseeable if there have been this many incidents." (J.A. at 857) At the outset, therefore, the court limited the nature of the experts' testimony to exclude commentary unnecessary to aid the jury. Additionally, the district court heard arguments from counsel for both sides on the reliability of Plaintiff's proffered experts, and Plaintiff highlighted aspects of the experts' personal knowledge and experience as it relates to the opinions they ultimately rendered. Although the district court did not explicitly probe the rationale for the proposed expert opinions during the hearing, counsel set forth the basis of the proffered witnesses' expertise, and directly linked it to the facts of the case.

Moreover, the record indicates that the experts adequately "explain[ed] how th[eir] experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *See* Fed. R. Evid. 702 advisory committee's note. In his deposition, Watt elaborated on his experience designing driver's enclosures for Seattle transit buses and testified to viewing line haul buses similar to the bus Sands drove in October 2001. Watt discussed at some length the effect of installing a driver's shield on preventing passenger attacks, linking it expressly to the facts of this case. Likewise, in his written declaration, Martin details his threat assessment experience at length. He further lists the materials reviewed in formulating his opinion, which include Defendant's prior incident reports, Defendant's Professional Driver's Guidelines, Driver's Handbook, Driver's Bulletin on Emergency Operations, the deposition

transcript of Defendant's Vice President of Risk, as well as the testimony of Defendant's various other personnel. Martin expressly states that his opinions were based on his extensive experience and review of the relevant materials. *Cf.* Fed. R. Evid. 702 advisory committee's notes ("[W]hen a law enforcement agent testifies regarding the use of code words in a drug transaction . . . [t]he method used by the agent is the application of extensive experience to analyze the meaning of conversations.") Upon review of the record, we cannot say with "definite and firm conviction" that the district court abused its discretion in finding Plaintiff's experts reliable, and permitting them to testify. *See Conwood*, 290 F.3d at 781.

## II.     ADMISSIBILITY OF PRIOR INCIDENT REPORTS

### A.     Standard of Review

We review a trial court's decision to admit evidence, such as the prior incident reports, under an abuse of discretion standard. *Kumho Tire*, 526 U.S. at 152; *JGR*, 370 F.3d at 524. "An abuse of discretion occurs when the district court relies on clearly erroneous findings of fact, . . . improperly applies the law, . . . or . . . employs an erroneous legal standard." *Barner v. Pilkington N. Am., Inc.*, 399 F.3d 745, 748 (6th Cir. 2005) (internal citations and quotations omitted). "No error in the admission or exclusion of evidence is ground for reversal unless refusal to take such action appears to the Court to be inconsistent with substantial justice." *Prater v. Sears, Roebuck & Co.*, 372 F.2d 447, 448 (6th Cir. 1967) (internal citations and quotations omitted).

### B.     Admitting Prior Incident Reports

Defendant filed a motion *in limine* to exclude its prior incident reports from evidence. The district court granted Defendant's motion in part, admitting reports for those incidents (1) occurring between October 3, 1997 and October 3, 2001, which (2) "involved a passenger assaulting or attempting to assault . . . or grabbing or attempting to grab the driver, the steering wheel or the brakes," (3) on a moving bus. (J.A. at 714-15) Defendant argues that the prior incidents detailed in those reports were not sufficiently similar to the October 3, 2001 attack, and thus that the court abused its discretion in admitting any of the reports. Again, we disagree.[1]

Only prior incidents that are "substantially similar" to the one at issue will be admissible in evidence. *Rye v. Black & Decker Mfg. Co.*, 889 F.2d 100, 102 (6th Cir. 1989) (citing *Koloda v. Gen. Motors Parts Div., Gen. Motors Corp.*, 716 F.2d 373, 376 (6th Cir. 1983)). This is so in large part because all evidence deemed admissible by the district court must meet the minimal standards of relevancy articulated in Federal Rules of Evidence 401 and 403.[2] Incidents which "occurred under similar circumstances or share the same cause" can properly be deemed substantially similar. *Rye*,

---

[1]Plaintiff urges us to apply Tennessee state law in reviewing admissibility of the prior incident reports. While state law governs substantive issues in diversity suits, federal procedural law applies. *Legg v. Chopra*, 286 F.3d 286, 289 (6th Cir. 2002) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). The Federal Rules of Evidence constitute procedural rules. *Id.* While the Rules direct federal courts sitting in diversity to apply state evidentiary laws in three narrow contexts, *see* Fed. R. Evid. 302 (presumptions); Fed. R. Evid. 501 (privileges); Fed. R. Evid. 601 (witness competency), federal courts properly apply the Rules' relevance requirements in ruling on the admissibility of evidence. *See County of Ontonagon, Mich. v. Land Located in Dickinson County, Mich.*, 902 F.3d 1568, 1990 WL 66813, at *4 (6th Cir. May 21, 1990) (unpublished).

[2]This Circuit's cases examining similar accident evidence in the negligence context prior to the promulgation of the Federal Rules of Evidence similarly rely on relevance in resolving challenges to the admissibility of that evidence. *See New York Life Ins. Co. v. Seighman*, 140 F.2d 930, 932 (6th Cir. 1944) (finding evidence of a similar occurrence prior to the accident at hand relevant because it "happened under substantially the same conditions at substantially the same place as the accident in the suit"); *City of Knoxville, Tenn. v. Bailey*, 222 F.2d 520, 531 (6th Cir. 1955) ("All evidence received was . . . relevant. Testimony that other persons had slipped and fallen previously at the place of the accident was admissible.").

889 F.2d at 102. The proffering party bears the burden of proof to establish substantial similarity. *Id.* A showing of substantial similarity insures that the evidence meets the relevancy requirements of Rules 401 and 403. *See id.* at 103.

In the case at bar, Plaintiff sought to introduce evidence of prior incidents on Defendant's buses to show Defendant had been on notice of incidents likely to lead to the kind of injury suffered by Plaintiff. Plaintiff suffered injury when Defendant's driver lost control of the bus after being attacked by another passenger on the bus, and after that passenger attempted to take control of the wheel. The prior incidents admitted by the district court were substantially similar to the October 3, 2001 incident because they involved either passenger interference with the bus driver, or a passenger's attempt to take control of the bus's steering wheel or brakes. Those incidents therefore occurred under "similar circumstances" or "share the same cause" as the October 3, 2001 incident. *See Rye*, 889 F.2d at 102; *see also Morales v. American Honda Motor Co., Inc.*, 151 F.3d 500, 512 (6th Cir. 1998) (finding the "substantially similar" requirement satisfied and accident statistics involving "minibikes and small vehicles of the same sort" admissible because the "vehicles perform a similar purpose") (citation omitted).

Defendant attempts to distinguish the prior incident reports by framing the October 3, 2001 incident with great specificity. Defendant notes, in its brief on appeal, that, of the forty-two incident reports admitted, only five involved incidents resulting in an accident, and none involved armed passengers attacking and seriously injuring a driver. While other circuits have opted to apply a more relaxed standard of similarity where prior accidents are offered to prove notice, we have "neither accepted nor rejected this standard" in our controlling precedent. *Rye*, 889 F.2d at 102. However, persuasive precedent in this Circuit has found that if a "prior occurrence is offered to prove notice, . . . a lesser degree of similarity is required provided the accident would have tended to warn the defendant." *Bryan v. Emerson Elec. Co., Inc.*, 856 F.2d 192, 1988 WL 90910, at *5 (6th Cir. 1988) (unpublished). The *Bryan* court "decline[d] to adopt any fixed definition of the degree of "similarity" required before prior accidents or occurrences become relevant." *Id.* Although we declined to apply a more relaxed standard of substantial similarity in *Miller v. Norfolk & Western Railway Co.*, we did so because the plaintiffs had "offered the evidence to show the *actual* hazardousness of the crossing itself, not merely . . . *notice* of such hazardousness," and because the context of car-train collision cases requires a higher degree of similarity for prior accidents to be relevant. 178 F.3d 1295, 1999 WL 196554, at *7 (6th Cir. April 1, 1999) (unpublished). Accordingly, it cannot be said that the district court misapplied the law in finding the prior incident reports admissible.

### C.     Limiting Admissibility of Prior Incident Reports

Review for abuse of discretion cuts both ways, and we find that the district court did not abuse its discretion in limiting the admissibility of prior incident reports. In her cross-appeal, Plaintiff contends that the district court abused its discretion in partially granting Defendant's motion *in limine* and limiting the prior incident reports admissible in evidence. We disagree. The requirement of substantial similarity facilitates the exclusion of irrelevant evidence under Rules 401 and 403. The relevance of similar incidents depends in part on their proximity in time to the incident at issue in the case before the court.[3] *See Hicks v. Six Flags Over Mid-America*, 821 F.2d 1311,

---

[3] Several cases decided before the Federal Rules of Evidence were promulgated also support this view. *See Seighman*, 140 F.2d at 932 (finding evidence of a similar incident relevant "if it relates to an occurrence which happened . . . at a time not too remote"); *Sue v. Chi. Transit Auth.*, 279 F.2d 416, 418-19 (7th Cir. 1960) (finding district court properly limited evidence of prior instances of third parties hurling objects into defendant's moving buses for the five years predating the accident at issue); *Jones & Laughlin Steel Corp. v. Matherne*, 348 F.2d 394, 400 (5th Cir. 1965) ("The requirement that the prior accident not have occurred at too remote a time is a special qualification of the rule requiring similarity of conditions.").

1315-16 (8th Cir. 1987) (no abuse where district court excluded evidence of accidents six years before as too remote notwithstanding plaintiff's argument that the evidence "would have established how long the defendant had been on notice of the danger"); *Jones v. Otis Elevator Co.*, 861 F.2d 655, 661-62 (11th Cir. 1988) ("Because of the potential prejudicial impact of prior accidents, courts have developed limitations governing their admissibility," including that "the prior accident must not have occurred too remote in time").  Consequently, the district court did not abuse its discretion in excluding prior incidents more than four years remote in time.  *See Hicks*, 821 F.2d at 1315 (incidents six years earlier too remote); *Sue*, 279 F.2d at 418 (five years too remote); *Jones*, 861 F.2d at 662 (incidents 18 months old sufficiently close).

## III.    DEFENDANT'S REQUESTED JURY INSTRUCTION ON STATE OF THE ART

### A.        Standard of Review

An abuse of discretion standard also applies when we review a trial court's decision not to give a requested jury instruction.  *Williams ex rel. Hart v. Paint Valley Local Sch. Dist.*, 400 F.3d 360, 366 (6th Cir. 2005).  The district court abuses its discretion when it "relies on clearly erroneous findings of fact, . . . improperly applies the law, . . . or . . . employs an erroneous legal standard." *Barner*, 399 F.3d at 748.

### B.        State of the Art Jury Instruction

Defendant asserts that the district court erred in failing to instruct the jury on industry standards, which presumably would have allowed jurors to infer that because "no line haul bus company in the country had an entry-resistant barrier installed on its buses," (Def.'s Br. at 43), Defendant should not be held liable for its failure to install such shields.  Defendant's requested instruction stated:

> I charge you that Greyhound did not manufacture the bus in question, nor is it in the business of manufacturing buses.  However, because Plaintiff alleges that Greyhound should have installed driver enclosures on its buses, Plaintiff is arguing Greyhound should be held to the same standards as manufacturer of buses. Accordingly, Greyhound is entitled to the same defenses that a manufacturer is ordinarily afforded in product liability actions.

> I charge you that whether Greyhound complied with industry-wide practices, state of the art, or federal regulations regarding bus design, safety procedures and policies, and safety equipment is a relevant question for you the jury to consider in your deliberations.  Greyhound's compliance with the applicable safety regulations and procedures shall raise a rebuttable presumption that the bus design and safety equipment was not in an unreasonably dangerous condition.

> I charge you that a manufacturer is not an insurer of the product it designs, and it is not required that the design adopted be perfect, or render the product accident proof, or incapable of causing injury, nor is it necessary to incorporate the ultimate safety features in the product.  Hence, a departure from the required standard of care is not demonstrated where it is simply shown that there was a better, safer, or different design which would have averted the injury.

(J.A. at 708)  In support of this request to charge, Defendant cited *Clarksville-Montgomery County School System v. United States Gypsum Co.*, 925 F.2d 993 (6th Cir. 1991), *Kerley v. Stanley Works*, 553 S.W.2d 80 (Tenn. Ct. App. 1977), and Tenn. Code Ann. § 29-28-104.[4]

A district court commits reversible error in refusing to give a jury instruction at a party's request where "(1) the omitted instructions are a correct statement of the law; (2) the instruction is not substantially covered by other delivered charges; (3) the failure to give the instruction impairs the requesting party's theory of the case." *Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815, 820 (6th Cir. 1999).  Tennessee law has not required courts to instruct juries on 'state of the art' principles in the negligence context.  Rather, such instructions have predominantly been given in products liability cases.  *See, e.g.*, *Clarksville-Montgomery County Sch. Sys. v. U.S. Gypsum Co.*, 925 F.2d 993, 1005 (6th Cir. 1991); *Boyd v. Celotex Corp.*, 951 F.2d 348, 1991 WL 278967, at *2 (6th Cir. 1991) (unpublished); *Abbott v. Am. Honda Motor Co., Inc.*, 682 S.W.2d 206, 208, 211 (Tenn. Ct. App. 1984) (proceeding at trial solely on theory of strict liability).  Indeed, the two cases and the provision of the Tennessee code cited in support of Defendant's requested instruction concern products liability actions.  *Clarksville-Montgomery County Sch. Sys.*, 925 F.2d at 995; *Kerley*, 553 S.W.2d  at 81 (wrongful death suit "predicated upon the theory of strict liability and negligent design"); Tenn. Code Ann. § 29-28-104 (establishing presumptions for products liability actions).

Although the plaintiff in *Kerley* asserted both product liability and negligence claims, that case does not squarely support Defendant's requested instruction.  The plaintiff in *Kerley* presented a similar negligence claim inasmuch as she alleged that, had defendant installed a ground fault circuit interrupter on an electrical panel box, her husband would not have been electrocuted when using a drill attached to that box.  *Kerley*, 553 S.W.2d at 82.  There, the evidence demonstrated "growing use of the device . . . at the time of the accident," but also that the device "was not uniformly used nor was it a requirement of the National Electrical Safety Code."  *Id. Kerley* is clearly distinguishable from the case at hand.  First, the court in *Kerley* found the installation safe and attributed the injuries to the negligence of the deceased, the plaintiff's husband.  *Id.* at 83. Clearly, no negligence can be attributed to Plaintiff in this case.[5]  Second, in *Kerley*, the defendant was a subcontractor employing the plaintiff, while here Defendant is a common carrier that undertook to transport Plaintiff as a passenger.  Common carriers are "bound to the utmost diligence which human skill and foresight can effect, and if injury occurs by reason of the slightest omission in regard to the highest perfection of all the appliances of transportation, . . . the carrier is responsible." *Louisville & Nashville R.R. Co. v. Hutcherson*, 8 Tenn. App. 235, 1928 WL 2105, at *6 (Tenn. Ct. App. 1928).  A district court does not err when it declines to give a jury instruction on industry standards not warranted under existing law of the applicable jurisdiction. *See Webster*, 197 F.3d at 820.  Defendant has cited no law mandating the requested instruction, nor have we found any.

In point of fact, there is "no basis in this record deviating from the generally accepted rule that industry standards may be proven as some evidence of care but are not conclusive on the matter."  *Johnson v. Husky Indus., Inc.*, 536 F.2d 645, 648 (6th Cir. 1976); *see also Cherokee Ins. Co. v. E.W. Blanch Co.*, 66 F.3d 117, 123 (6th Cir. 1995) (citing *Easterly v. Advance Stores Co., Inc.*, 432 F. Supp. 7, 9 (E.D. Tenn. 1976)) (noting that Tennessee courts have recognized the principle that "there are precautions so imperative that even their universal disregard will not excuse

---

[4]"Compliance by a manufacturer or seller with any federal or state statute or administrative regulation existing at the time a product was manufactured and prescribing standards for design, inspection, testing, manufacture, labeling, warning or instructions for use of a product, shall raise a rebuttable presumption that the product is not in an unreasonably dangerous condition in regard to matters covered by these standards."  Tenn. Code Ann. § 29-28-104.

[5]In fact, the parties stipulated that Plaintiff was sleeping at the time of the attack.  (J.A. at 1155)

their omission"). The same is true of safety regulations, whether promulgated at the federal, state, or local level. Compliance with such regulations (or in this case, absence of regulation) "does not relieve one of tort liability for failure to exercise the highest degree of care." *City of Elizabethton v. Sluder*, 534 S.W.2d 115, 117 (Tenn. 1976); *see also Kerley*, 553 S.W.2d at 82 ("While compliance with standards of the National Electric Safety Code is not conclusive as to Defendant's negligence, there must be evidence in the record from which the jury could find the minimum standards of the Code were insufficient under the facts and circumstances of the case."). To the extent that industry standards and compliance with safety regulations may factor into a jury's consideration of Defendant's care in operating its bus line, the district court's instructions on the duty of care owed by a common carrier to its passengers permit consideration of such evidence.[6] *See Easterly*, 432 F. Supp. at 9 ("Customary practice is not ordinary care; it is but evidence of ordinary care.").

Further, the district court's instructed the jury on proximate cause, stating "plaintiff must show that her injury was a reasonably foreseeable probability, not just a remote possibility, and that some action within Greyhound's power more probably than not would have prevented the injury." (J.A. at 1158) Plaintiff introduced evidence on the feasibility of driver's shields precisely to show the likelihood that "some action within Greyhound's power" would have prevented the October 3, 2001 accident, and not in support of a products liability claim hinging on the failure to include such shields in Defendant's buses.[7]

Defendant invokes *Hutcherson* in support of its argument that a state of the art instruction was warranted here. In *Hutcherson*, a passenger sued a railroad company for negligence when he fell out an open vestibule door on a moving train. 8 Tenn. App. 235, 1928 WL 2105, at *1. There, the court stated, "A carrier of passengers . . . is held to the exercise of the highest degree of care and foresight for the passenger's safety. This applies to the selection and use of suitable carriages." *Id.* at *2. Although "common carriers . . . undertake that the . . . carriages employed are roadworthy and properly constructed, and furnished according to the present state of the art," *id.* at *6, mere compliance with the "present state of the art" does not suffice to relieve common carriers of liability in negligence. Common carriers must "exercise of the highest degree of care and foresight for the

---

[6]Judge Learned Hand's classic opinion in *The T.J. Hooper v. Northern Barge Corp.*, 60 F.2d 737 (2d Cir. 1932), proves somewhat instructive here. There, the defendant's tug boats were engaged in towing two of plaintiff's barges when "an easterly gale" resulted in the loss of the two barges. *Id.* at 737. Had the tugs been equipped with functional receiving sets, the operators would have learned of the gales in sufficient time to seek safer waters. *Id.* at 739. Although there was no industry standard of equipping the tugs with receiving sets, the court nevertheless found the defendant liable. Importantly, the court stated:

> Is it then a final answer that the business had not yet generally adopted receiving sets? There are, no doubt, cases where courts seem to make the general practice of the calling the standard of proper diligence . . . . Indeed, in most cases reasonable prudence is in fact common prudence; but strictly it is never its measure; a whole calling may have unduly lagged in the adoption of new and available devices.

*Id.* at 740. As this Court has previously observed, Tennessee courts have recognized the principle set forth in *The T.J. Hooper. See Cherokee Ins. Co.*, 66 F.3d at 123 (citing *Easterly*, 432 F. Supp. at 9).

[7]Plaintiff's Amended Complaint alleged causes of action both in negligence against Defendant Greyhound, and in products liability against Defendant Motor Coach Industries, Inc., the manufacturer of Defendant Greyhound's buses. The district court granted Defendant Motor Coach Industries, Inc.'s ("MCI's") motion for summary judgment on July 20, 2005, effectively dismissing it from the case. Further, with respect to Plaintiff's claim of failure to maintain passenger seatbelts on its buses, the district court granted summary judgment to Defendant MCI on the basis that it "complied with all industry and governmental standards in the manufacture and equipping of the bus," and to Greyhound on the basis that "Tennessee common law imposes no duty on a bus manufacturer to equip a bus with passenger seat belts." (Op. on Summ. J. Mots. at 12 (July 20, 2005)) In our view, the district court properly treated Plaintiff's cause of action against Defendant MCI as one sounding in products liability, and against Defendant Greyhound as one in negligence.

passenger's safety," *id*. at \*2, and where they fail to do so – even if such exercise requires departure from industry standards – a jury may find them liable in negligence. We find no abuse of discretion in the district court's refusal to instruct the jury as Defendant requested.

## IV.     DEFENDANT'S MOTION FOR MISTRIAL

### A.     Standard of Review

We review the district court's denial of a motion for mistrial for abuse of discretion. *United States v. Atisha*, 804 F.2d 920, 926 (6th Cir. 1986). Additionally, an abuse of discretion standard applies to appellate review of claims that the district court improperly allowed counsel to make inflammatory or prejudicial remarks during closing arguments. *Salei v. Am. Express Travel Related Servs*., 134 F.3d 372, 1997 WL 809956, at \*4 (6th Cir. Dec. 19, 1997) (unpublished). The district court abuses its discretion when it "relies on clearly erroneous findings of fact, . . . improperly applies the law, . . . or . . . employs an erroneous legal standard." *Barner*, 399 F.3d at 748.

### B.     Motion for Mistrial

Defendant moved for a mistrial on the ground that Plaintiff's counsel made purportedly improper remarks during closing arguments. Counsel acts inappropriately in attempting to "introduce extraneous matters before a jury or, by questions or remarks, endeavor[ing] to bring before it unrelated subjects" during closing arguments at trial. *City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 756 (6th Cir. 1980). Where it finds "a reasonable probability that the verdict of a jury has been influenced by such conduct," a district court properly sets the verdict aside, and should declare a mistrial. *Id.* To determine whether improper statements or conduct surreptitiously influence a jury verdict, "a court must examine, on a case-by-case basis, the totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case (e.g., whether it is a close case), and the verdict itself." *Id.*

Looking first to the nature of the comments, the record reflects that during closing arguments, Plaintiff's counsel reviewed the compensatory damages sought on Plaintiff's behalf, placing them in three categories of "[h]er past medical bills, her future medical bills, and the pain and suffering." (J.A. at 1147) Speaking about Plaintiff's future medical bills, counsel stated: "This is very important. This determines what kind of life [Plaintiff] will live the next 20 years of her life, or if she lives those 20 years. This determines whether she has some quality of life and what level." (J.A. at 1147-48) Defendant, on appeal, cites only part of counsel's statement and characterizes it as implying that Plaintiff's "life would be shortened if the jury did not return a verdict in her favor."[8] (Def.'s Br. at 40) Taken in the proper context, however, this statement of Plaintiff's counsel can hardly be deemed prejudicial. Nor does the fact that Plaintiff's "future medical expenses would be covered under Michigan's no-fault insurance laws" somehow make it prejudicial. (*See* Def.'s Br. at 41) Counsel's statement did not constitute an attempt to introduce "extraneous matters" or "unrelated subjects" to the jury. In fact, this statement was directly relevant to a real issue before the jury in this case – compensatory damages.

Moreover, counsel's subsequent remarks counteracted any arguably prejudicial tint, as he reviewed several options for the jury to consider in a possible compensatory award for future medical care. As an aid to the jury, counsel chose the lowest estimated cost of future care in his calculations and gave the jury the option to increase that number to provide Plaintiff with "better care." (J.A. at 1149) Defendant's counsel made no contemporaneous objections to the allegedly

---

[8] According to Defendant's brief: "Counsel stated that the jury's task was to determine 'what kind of life Sharon will live the next 20 years of her life, or if she lives those 20 years.'" (Def.'s Br. at 39-40)

prejudicial remarks. *Cf. Kiewit*, 624 F.2d at 758 ("The remarks were persistently made over the recurring and almost constant objection of counsel for the appellant."). Although the verdict in this case – an $8 million compensatory award to Plaintiff – is obviously quite high, it cannot be taken to indicate that the challenged comments improperly influenced the jury. Past medical care totaled $1,590,945 at the time of trial, and the low end estimate of future medical care was $4,677,116. (J.A. at 1147, 1149) The accident at issue left Plaintiff a paraplegic. The remainder of the award could easily constitute additional compensation for future medical care and a pain and suffering award. Indeed, Defendant does not challenge the verdict as excessive. We are not left with "a definite and firm conviction" that the district court abused its discretion in permitting counsel's remarks and denying Defendant's motion for mistrial on this basis.

## V.        DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

### A.        Standard of Review

We typically review a district court's denial of a motion for judgment as a matter of law *de novo*. *K & T Enters., Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 176 (6th Cir. 1996); *Shanklin v. Norfolk S. Ry. Co.*, 369 F.3d 978, 993 (6th Cir. 2004). However, when faced with a motion for judgment as a matter of law based on a challenge to the sufficiency of the evidence, as here, we apply "the standard of review employed by the courts of the state whose substantive law controls the action." *Shanklin*, 369 F.3d at 993 (citing *Morales*, 151 F.3d at 506). Under Tennessee law, we do not "weigh the evidence;" rather, we "take the strongest legitimate view of the evidence in favor of the plaintiff, indulging in all reasonable inferences in his favor, and disregarding any evidence to the contrary." *Id.* (citing *Williams v. Brown*, 860 S.W.2d 854, 857 (Tenn. 1993)). A grant of judgment as a matter of law is appropriate if "reasonable minds could not differ as to the conclusion to be drawn from the evidence." *Id.* (citing *Eaton v. McLain*, 891 S.W.2d 587, 590 (Tenn. 1994)).

### B.        Motion for Judgment as a Matter of Law

We affirm the district court's denial of Defendant's motion for judgment as a matter of law. Defendant argues that Plaintiff's only evidence on foreseeability is, first, inadmissible and, second, insufficient to support the conclusion that Defendant "should have foreseen the October 3, 2001 attack." (Def.'s Br. at 38) Additionally, Defendant argues that Plaintiff's only evidence of 'preventability' – offered by its two challenged expert witnesses – should also have been excluded by the district court.

Applying Tennessee's standard to review the sufficiency of the evidence, the Court must "take the strongest legitimate view of the evidence in favor of the plaintiff, indulging in all reasonable inferences in his favor, and disregarding any evidence to the contrary." *Shanklin*, 369 F.3d at 993 (citing *Williams*, 860 S.W.2d at 857). To succeed on her negligence action, Plaintiff had to prove both cause in fact and proximate cause. *McClenahan v. Cooley*, 806 S.W.2d 767, 774 (Tenn. 1991). Proximate cause requires that

> (1) the tortfeasor's conduct must have been a 'substantial factor' in bringing about the harm . . . ; (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which negligence has resulted in the harm; and (3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence.

*Id.* at 775 (citations omitted). Accordingly, a plaintiff must show "that some action within [the defendant's] power more probably than not would have prevented the injury." *Tedder v. Raskin*, 728 S.W.2d 343, 348-49 (Tenn. Ct. App. 1987). As the Tennessee courts have observed, "[n]egligence is ordinarily an issue to be decided by a jury, and can be withdrawn from the jury only

in those cases where the facts are established by evidence free from conflict and the inference from the facts is so certain that all reasonable minds must agree." *Williams*, 860 S.W.2d at 857.

The district court properly denied Defendant's motion for judgment as a matter of law. As previously discussed, we disagree with Defendant's claim that the district court abused its discretion in admitting the expert witness testimony and prior incident reports. Those incident reports could be taken, in the minds of reasonable people, to establish that Defendant had notice that passengers could potentially interfere with the safe passage of its buses by attacking its drivers or by grabbing the wheel of its buses. Such notice could be taken by these reasonable-minded individuals to establish foreseeability. Additionally, Plaintiff's experts testified that, had Defendant installed entry-resistant barriers to shield its drivers, accidents like the one at issue here could have been prevented. Although, as Defendant contends, these barriers may not have been "an effective deterrent to Igric's violent attack," they could have alerted Defendant's driver to the attack in time for him to pull the bus to the side of the road or call for assistance. Further, expert testimony called into question the adequacy of emergency training provided to Defendant's drivers. This is simply not a case where "reasonable minds could draw but one conclusion," *Williams*, 860 S.W.2d at 857, and accordingly, we find the district court did not err in denying Defendant's motion for judgment as a matter of law.

## VI.        DISCOVERY OF PRIOR INCIDENT REPORTS

### A.        Standard of Review

We review deferentially a district court's decision to limit discovery, and "will intervene only if it was an abuse of discretion resulting in substantial prejudice." *Scales v. J.C. Bradford & Co.*, 925 F.2d 901, 906 (6th Cir. 1991) (citations omitted).

### B.        Limiting Discovery

Plaintiff initially sought production of all documents related to "other violent episodes" and "unruly passengers" on Defendant's buses for an unlimited span of time. When Defendant objected, Plaintiff filed a motion to compel production. The district court initially limited discovery of the prior incident reports to those "documents related to other violent episodes for a period of fifteen (15) years and to unruly passengers for ten (10) years." (J.A. at 163) In so doing, the Magistrate Judge observed that "a number of requests were overly broad because they encompassed material not relevant to the issues in this case." (J.A. at 163) Defendant responded by producing documents from October 3, 1997 to October 3, 2001, as well as an affidavit from an employee, Darwin Johnson ("Johnson"), detailing the reasons why compliance with the court's order would be unduly burdensome for Defendant and would require production of an overly broad body of documents. Concurrently, Defendant moved for a protective order to limit discovery to that time period and to exclude reports of physical assaults at Defendant's terminals. The district court granted this motion for protective order. Plaintiff now challenges that the district court abused its discretion. We find no abuse.

Generally, Federal Rule of Civil Procedure 26(b) enables parties to discover any unprivileged evidence or information relevant to their claim. Fed. R. Civ. P. 26(b)(1). However, district courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce. Fed. R. Civ. P. 26(b)(2)*; see also Scales*, 925 F.2d at 906 ("Th[e] desire to allow broad discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant."); *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1096 (6th Cir. 1994); *Trevino v. Celanese Corp.*, 701 F.2d 397, 406 (5th Cir. 1983) (citation omitted) ("[T]he scope of discovery . . . is limited only by relevance and burdensomeness."). Specifically, the Federal Rules of Civil Procedure instruct district courts to limit

discovery where its "burden or expense . . . outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii). Notably, the Advisory Committee amended Rule 26(b) in both 1983 and 1993 to afford district courts greater discretion in restricting the scope of discovery. Fed. R. Civ. P. 26(b) advisory committee's notes (1983) ("The rule contemplates greater judicial involvement in the discovery process . . . . In an appropriate case the court could restrict the . . . scope of a production request."); Fed. R. Civ. P. 26(b) advisory committee's notes (1993) ("The revisions in Rule 26(b)(2) are intended to provide the court with broader discretion to impose additional restrictions on the scope and extent of discovery."). Although a plaintiff should not be denied access to information necessary to establish her claim, neither may a plaintiff be permitted "to 'go fishing' and a trial court retains discretion to determine that a discovery request is too broad and oppressive." *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir. 1978).

Defendant demonstrated that Plaintiff's request was overly broad. Plaintiff initially moved to compel production of incident reports for twenty years predating the incident at hand. The district court narrowed the scope of documents related to other violent episodes to fifteen years, and documents reporting incidents of unruly passengers to ten years. Additionally, Plaintiff requested "'[u]nusual occurrence' reports . . . or other incident reports regarding armed physical assault against persons at Defendant GLI's Greyhound bus terminals from January 1, 1995 through the present." (J.A. at 123) The court quashed this request on relevance grounds.

Moreover, Defendant made a clear showing that compliance would prove unduly burdensome. The record reflects that the search for responsive documents covering the period of October 3, 1997 to October 3, 2001 – which Defendant produced – took "approximately two weeks and involved over 180 hours of labor." (J.A. at 208) The record further reflects that production of the documents Plaintiff requested would entail significant added cost and labor, including individual review of potentially responsive documents and retrieval of physical files from an off-site storage facility. Permitting discovery of incidents dating back to 1993 would have required review of 6,542 files. Defendant estimated such review would require 2,181 hours of manpower and would cost $44,238.33. An estimated 10,000 physical files "representing all forms of incidents, unusual occurrences, or reportable events occurring on Greyhound buses from 1986 to 1993" would have required manual review for responsiveness had the district court permitted discovery up to fifteen years predating the incident. (J.A. at 148) Finally, Defendant would have been required to individually review 1,585 "unknown" files. (*Id.*) Defendant estimated that a search encompassing fifteen years would cost $141,000.00. We cannot say the district court abused its discretion in granting Defendant's motion for protective order and limiting the breadth of Plaintiff's discovery to avoid undue burden. *See Scales*, 925 F.2d at 906-07 (finding no abuse where district court limited discovery to payroll records in one of defendant company's offices, rather than the master payroll record reflecting the salaries of "approximately 1,000 partners and employees in 51 offices located in 13 states").

## C.     Punitive Damages

In her cross-appeal, Plaintiff argues that, had the district court ordered discovery of additional prior incident reports and admitted them into evidence, the jury would have awarded punitive damages.[9] (Pl.'s Br. at 63-66) Under Tennessee law, punitive damages may be awarded where a defendant acted "(1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly," and that state of mind must be proven "by clear and convincing evidence." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992). Because we affirm the district court's decisions to limit

---

[9]Plaintiff does not argue that the district court erred in instructing the jury on punitive damages.

discovery and admissibility of the prior incident reports, no additional evidence would be available to a jury on remand in its consideration of whether "clear and convincing evidence" supports a finding of recklessness here.  Accordingly, remand and retrial on the issue of punitive damages would be inappropriate in this case, and we deny Plaintiff's invitation to remand.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's orders in all respects.