NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0446n.06

No. 13-4210

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jun 19, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ASSET MANAGEMENT ONE LLC, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| v. | ) | DISTRICT OF OHIO |
| | ) | |
| U.S. BANK NATIONAL ASSOCIATION, | ) | O P I N I O N |
| | ) | |
| Defendant-Appellee. | ) | |

**BEFORE:**     **MOORE and KETHLEDGE, Circuit Judges; and TARNOW, District Judge.**[*]

**ARTHUR J. TARNOW, District Judge**. Plaintiff-Appellant appeals the district court's judgment dismissing its complaint alleging a class-action claim for breach of the implied duty of good faith in contract against Defendant-Appellee. Defendant is a national bank that conducts business in Ohio. Defendant made three commercial construction loans to non-party Stonehenge—two in 2003 and one in 2006—that were memorialized in three separate Notes. In 2012, Stonehenge assigned all of its claims relating to the Notes to Plaintiff. For the reasons that follow, we **AFFIRM** the judgment of the district court.

The terms governing the process for calculating and charging interest were materially the same for all three Notes. Each Note contractually obligated Stonehenge to repay the principal at a certain maturity date and also make monthly interest payments based on a variable rate in the

---

[*] The Honorable Arthur J. Tarnow, United States Senior District Judge for the Eastern District of Michigan, sitting by designation.

interim. Although it was not required by the Notes, Defendant would send Stonehenge invoices approximately two weeks in advance of each payment date estimating the amount of interest due. Defendant's invoices would estimate the interest due based on the assumption that the variable interest rate and the principal balance would not change over the next two weeks. Sometimes the variable interest rate and or outstanding principal would increase after the invoice date, resulting in an underestimation of Stonehenge's obligation to pay. Sometimes the variable interest rate and or outstanding principal would decrease after the invoice date, resulting in an overestimation of Stonehenge's obligation to pay. Sometimes Defendant's estimations were correct, resulting in an accurate predication of Stonehenge's obligation to pay. Regardless, Defendant's estimation methodology for invoicing Stonehenge would remain constant.

Stonehenge's practice was to pay the amount Defendant estimated in the invoices. Therefore, some months Stonehenge would pay more than it owed Defendant, some months it would pay less than it owed Defendant, and some months it would pay exactly what it owed Defendant. Defendant's practice in handling the disparities was consistent regardless of whether there was an overpayment or underpayment. Defendant would simply add a line item charging or crediting Stonehenge in the next billing cycle depending on whether there was an overpayment or underpayment in the previous month. In the instances when Stonehenge overpaid its interest obligation, resulting in Defendant retaining "the float" for a month, Stonehenge received no derivative benefit. Likewise, in the instances when Stonehenge underpaid its interest obligation, Defendant did not capitalize the interest Stonehenge owed or penalize Stonehenge in anyway, thereby conferring no derivative benefit on Defendant.

No. 13-4210, *Asset Mgmt, LLC v. U.S. Bank National Assoc.*

When Stonehenge was unable to repay the principal of the loans by the maturity date, Defendant and Stonehenge amended the Notes with a series of modifications, the last of which occurred in August of 2009. In the modifications, Stonehenge agreed that:

> it has no defenses to or rights of setoff against Lender under the Note, the Mortgage and other Loan Documents, whether arising before or after the date hereof. Borrower hereby further acknowledges that, as of the date hereof, Lender has performed all of Lender's obligations under the Note.

*See, e.g.,* R. Doc. [10-5] at 2–3. Ultimately, Stonehenge defaulted on the loans with $2,550,605.79 of principal left to pay. In 2010, Defendant sold the Notes at a loss of $1,400,000.00. In 2012, Stonehenge assigned Plaintiff its claims relating to the Notes. Subsequently, Plaintiff sued Defendant on the basis of how Defendant applied Stonehenge's payments against the indebtedness. The district court granted Defendant's motion to dismiss the complaint for failure to state a claim upon which relief may be granted.

On appeal, Plaintiff argues that its complaint adequately pled facts to support a breach of contract claim on an opportunistic advantage theory. Alternatively, Plaintiff argues that the district court abused its discretion by dismissing the complaint with prejudice. In contrast, Defendant argues that we should not entertain Plaintiff's arguments because they were not raised below, that Stonehenge explicitly agreed that Defendants did not breach the contract, and the district court properly dismissed the complaint because Plaintiff raised only a mere possibility that Defendants breached. Because it is dispositive of the case that Defendant performed its duties exactly as the contract contemplated and Plaintiff's claims raise only a mere suspicion of a cognizable right of action, we need not address the parties' other arguments.

No. 13-4210, *Asset Mgmt, LLC v. U.S. Bank National Assoc.*

We review *de novo* a district court's dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 519 (6th Cir. 2008). We may affirm a district court on any basis supported by the record, including reasons not mentioned in a district court's order. *In re Comshare, Inc. Sec. Litig.*, 183 F.3d 542, 548 (6th Cir. 1999). We must construe the complaint in a light most favorable to Plaintiff, accept all well-pled factual allegations as true, and determine whether Plaintiff undoubtedly can prove no set of facts in support of those allegations that would entitle them to relief. *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). Conclusory allegations or legal conclusions will not suffice for a complaint to survive a Rule 12(b)(6) motion. *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). A complaint containing a statement of facts that merely creates a suspicion of a cognizable right of action is legally insufficient. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). We review a district court's decision to grant dismissal with prejudice for an abuse of discretion. *Atkinson v. Morgan Asset Mgmt., Inc.*, 658 F.3d 549, 553 (6th Cir. 2011). "An abuse of discretion occurs when the district court relies on clearly erroneous findings of fact, improperly applies the law, or employs an erroneous legal standard." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 296 (6th Cir. 2007) (internal citation and alteration omitted).

Plaintiff argues that Defendant committed three distinct types of breaches that individually support a claim for breach of the implied duty of good faith: the Interest Rate Breach, the Timing and Application Breach, and the Principal Breach. Plaintiff argues that Defendant committed the Interest Rate Breach when it used speculative interest rates and overestimated Stonehenge's payment amount. Plaintiff argues that Defendant committed the Timing and Application Breach when it did

not apply Stonehenge's overpayments to the principal when they were received. Plaintiff argues that Defendant committed the Principal Breach when it estimated Stonehenge's payment amount based on speculative principal balances. Alternatively, Plaintiff argues that the district court abused its discretion when it dismissed the complaint with prejudice because Plaintiff did not have the opportunity to amend the complaint.

Defendant argues that the district court properly dismissed the complaint because the allegations raised merely a possibility that Defendant acted in bad faith. Additionally, Defendant argues that it acted in good faith because its method of applying payments was procedurally neutral. Finally, Defendant argues that the terms of the Notes gave Defendant complete discretion to apply the payments as it saw fit. Rather than addressing the discursive arguments asserted by both parties, we will simply analyze the dispositive issues in this case, some portions of which were not briefed by either party.

The Notes contain a choice of law provision specifying that Ohio law governs these contracts, which neither party disputes. "Under Ohio law, the elements of a breach of contract claim are: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff as a result of the breach." *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012). Plaintiff argues that element three is satisfied because Defendant breached by violating its implied duty of good faith and fair dealing by taking opportunistic advantage of Stonehenge. Because Plaintiff must show all four elements, if Plaintiff cannot show element three, its entire breach of contract claim fails.

No. 13-4210, *Asset Mgmt, LLC v. U.S. Bank National Assoc.*

Defendant did not commit a Timing and Application Breach, because it performed exactly as the contract contemplated with regard to the timing and application of interest payments. Plaintiff argues that Defendant committed the Timing and Application Breach because it should have applied overpayments to the principal when it received the payments. It is clear that under Ohio law, however, Defendant performed exactly as the contract contemplated with regard to allocation of overpayments. Under Ohio law, "contract interpretation is a question of law for determination by the court." *Textileather Corp. v. GenCorp Inc.*, 697 F.3d 378, 382 (6th Cir. 2012). Under Ohio law, "construction of the contract should attempt to harmonize all the provisions rather than produce conflict in them; . . . no provision of the contract should be ignored as inconsistent if there exists a reasonable interpretation which gives effect to both." *Lincoln Elec. Co. v. St. Paul Fire and Marine Ins. Co.*, 210 F.3d 672, 685 (6th Cir. 2000) (internal citation and quotation excluded). The relevant terms of the contract governing the Stonehenge's payments state the following:

> 2.4 Lender may apply and allocate any payments against any portion of the Indebtedness then due as Lender, in its sole discretion, may elect.
> . . .
> 4.1 Borrower shall have the right to prepay the unrepaid advances of the principal sum, in whole or in part, from time to time, without premium or penalty; provided (a) that Lender shall receive written notice of Borrower's intention to so prepay no less than five (5) business days prior to such prepayment . . . .

R. Doc. [1-1] at 3. The "reasonable interpretation which gives effect to both" of these sections of the Notes mimics Defendant's actual methodology and performance regarding applying Stonehenge's payments. *Lincoln Elec. Co.*, 210 F.3d at 685. In its Reply Brief, Plaintiff argues that section 2.4 of the Notes does not authorize Defendant to hold the float and apply it to the next month's interest debt, but only to apply payments against indebtedness *then* due. Applnt. Rply Br.

-6-

at 3–4. This argument for bad faith might be persuasive in a vacuum. When viewed in light of the contract as a whole, however, it is clear that Defendant performed its contractual duties not only in good faith, but also exactly as contemplated by the contract. The implied duty of good faith and fair dealing may not be used to override the express terms of a contract. *Stephenson v. Allstate Ins. Co.*, 328 F.3d 822, 826 (6th Cir. 2003), *accord Internat'l Fidelity Ins. Co. v. Vimas Painting Co., Inc.*, No. 07-00298, 2009 WL 2243769 at *6 (S.D. Oh. July 23, 2009) (applying Ohio law). If Stonehenge wanted interest overpayments to be applied to unrepaid principal, then they would have had to indicate so to Defendant via written notice five days prior to their interest payments. Plaintiff has not alleged that Stonehenge ever submitted such written notices. Therefore, even taking all the facts alleged in the complaint as true, Plaintiff has failed to state a claim upon which relief can be granted with regard to the Timing and Application Breach.

Defendant did not commit an Interest Rate Breach or a Principal Breach, because Defendant's methods for estimating interest and principal were unbiased and conceived in good faith. Plaintiff states that the district court improperly concluded that Defendant's estimation methods were outcome-neutral when it dismissed Plaintiff's Interest Rate Breach and Principal Breach theories. Plaintiff argues that the district court should not have dismissed its Complaint because the only way to determine whether Defendant's estimation methods were outcome-neutral is by allowing discovery. Plaintiff argues that it should be allowed to use discovery to determine whether Defendant previously researched whether interest rates were more likely to rise or which borrowers were more likely to prepay principal. However, Plaintiff's premise is faulty. Contrary to Plaintiff's characterization, the district court stated that Defendant's method of estimating interest

No. 13-4210, *Asset Mgmt, LLC v. U.S. Bank National Assoc.*

rates was *procedurally* neutral, not *outcome*-neutral. R. Doc. [34] at 7–8 ("the borrowers and U.S. Bank shared the same degree of risk that actual interest rates would differ from U.S. Bank's estimated interest rates."). We find that the district court's procedurally neutral analysis applies with equal force to Defendant's method of estimating principal balances. Some months borrowers would prepay principal, some months borrowers would borrow additional funds—which was entirely in the control of borrowers, not Defendant. So, even accepting all of Plaintiff's allegations as true, the facts alleged here, at best, create a mere suspicion of a cognizable right of action. A mere suspicion of a cognizable right of action is legally insufficient to survive a Rule 12(b)(6) motion to dismiss. *Twombly*, 550 U.S. at 555.

Finally, the district court did not abuse its discretion when it dismissed the Complaint with prejudice. Plaintiff could prove no set of facts in support of its allegations that would entitle it to relief. Therefore, any attempt Plaintiff could make to amend the Complaint would be futile. The Court cannot say that the district court relied on clearly erroneous findings of fact, improperly applied the law, or employed an erroneous legal standard when it dismissed the complaint with prejudice. *Greyhound Lines, Inc.*, 474 F.3d at 296.

Accordingly, we **AFFIRM** the judgment of the district court dismissing the complaint with prejudice for failure to state a claim upon which relief can be granted.