**Rose ANWAR, Plaintiff-Appellant,**

v.

**DOW CHEMICAL COMPANY; MEGlobal International FZE; Ramesh Ramachandran, Defendants-Appellees.**

No. 16-2475

United States Court of Appeals, Sixth Circuit.

Argued: October 5, 2017

Decided and Filed: November 30, 2017

ARGUED: Russell C. Babcock, THE MASTROMARCO FIRM, Saginaw, Michigan, for Appellant. Matthew T. Nelson, WARNER, NORCROSS & JUDD, LLP, Grand Rapids, Michigan, for Appellee Dow Chemical. Jennifer J. Stocker, BARNES & THORNBURG LLP, Grand Rapids, Michigan, for Appellee MEGlobal. ON BRIEF: Victor J. Mastromarco, Jr., THE MAS-TROMARCO FIRM, Saginaw, Michigan, for Appellant. Matthew T. Nelson, Edward J. Bardelli, WARNER, NORCROSS & JUDD, LLP, Grand Rapids, Michigan, for Appellee Dow Chemical. Jennifer J. Stocker, BARNES & THORNBURG LLP, Grand Rapids, Michigan, for Appellee ME-Global.

Before: SUTTON, DONALD, and THAPAR, Circuit Judges.

## OPINION

BERNICE BOUIE DONALD, Circuit Judge.

Rose Anwar appeals the district court's dismissal of her claims and argues that the district court erred in granting a motion to dismiss for lack of personal jurisdiction and a motion for summary judgment to Defendants-Appellees MEG International and The Dow Chemical Company ("Dow") respectively. Anwar also argues that the district court erred in denying her request for additional discovery. We find that these arguments fail and **AFFIRM** the district court's decision.

## I.

Plaintiff-Appellant Rose Anwar, a U.S. citizen, was hired to work for MEG International in Dubai as an IT Manager on November 1, 2007. In 2011, Anwar received a promotion to Chief Information Officer and Communications Manager. Anwar alleges that, following her promotion, her immediate supervisor, Ramesh Ramachandran, began harassing her about working when she had young children at home. In addition to the harassment, Anwar alleges that Ramachandran openly demonstrated gender bias by making comments about not needing highly paid female employees in the company. Finally, Anwar alleges that Ramachandran expressed his disapproval of Anwar's decision to end her marriage, going so far as to meet with her husband to discuss the divorce and the couple's marital issues. Anwar alleges that this bias culminated in her termination on June 9, 2014, one day after she attended a divorce court proceeding, during which she had asked for an

immediate divorce to be initiated. Following her termination, Anwar brought suit against MEG International in a Dubai court alleging 1) failure to provide notice of termination in violation of the law; 2) employment termination for an arbitrary reason; and 3) failure to provide severance pay in violation of the law. Anwar was awarded severance pay, but in support of the lawsuit underlying this appeal, she argues that Dubai's courts were unable to provide a sufficient remedy for the sex and marital status discrimination she experienced.

On August 3, 2015, Anwar filed a complaint in federal district court in Michigan against MEG International, doing business as MEGlobal Americas, Inc., Ramachandran, and Dow, alleging that she was impermissibly terminated because of her gender, religion, national origin, and marital status. Anwar raised six claims: (1) Sex discrimination in violation of Title VII; (2) Sex discrimination in violation of the Michigan Elliott-Larsen Civil Rights Act ("ELCRA"); (3) Marital status discrimination in violation of ELCRA; (4) Breach of an express written agreement; (5) Breach of an implied contract; and (6) Promissory Estoppel. MEG International and Ramachandran filed a motion to dismiss on three bases: 1) the district court did not have personal jurisdiction; 2) service was improper; and 3) the district court was *forum non conveniens*. Dow likewise filed a motion to dismiss on two bases: 1) failure to state a claim because Anwar was not an employee of Dow at the time of the alleged acts; and 2) the district court was *forum non conveniens*.[1]

On January 26, 2016, the district court issued an order dismissing Anwar's claims against Ramachandran for lack of personal

jurisdiction and opening discovery for 90 days for the following limited purposes:

(1) Investigating Anwar's allegations that MEG International does business as MEG Americas and that the MEGlobal subsidiaries act as a single entity and (2) Anwar's allegation that Ramachandran and other MEG International managers are employed by Defendant Dow.

The parties were also instructed to file supplemental briefs on the two above-mentioned issues.

On March 11, 2016, Dow filed a motion for protective order to prohibit two depositions Anwar had requested, arguing that the depositions of Henry Roth, former President and CEO of MEG International, and Kimberly Wood, former Fraud Investigator for Dow, sought information that was "irrelevant and outside the limited scope of discovery the Court [ ] authorized[.]" Dow also argued that a protective order was "necessary to protect [Dow] from annoyance, embarrassment, oppression, and undue burden and expense." On March 21, 2016, the district court granted the protective order and stated:

Because discovery in this matter is intentionally limited at this time, Defendant Dow has shown good cause for a protective order under Rule 26(c)(1). While the testimony of Mr. Roth and Mrs. Wood may be relevant at a later stage of this litigation, such testimony is unlikely to provide relevant jurisdictional information proportional to the current needs of the case. *See* Rule 26(b)(1).

Finally, on September 20, 2016, the district court granted Defendants-Appellees' motions to dismiss and motion for summary judgment, and dismissed Anwar's claims.

---

1. The district court later converted Dow's motion to dismiss to a motion for summary judgment.

Anwar appealed on the motions underlying dismissal and the motion for protective order.

## II.

### A. MEGlobal's Motion to Dismiss

#### 1. Personal Jurisdiction

We review the district court's dismissal for lack of personal jurisdiction *de novo*. *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 899 (6th Cir. 2017). In deciding whether to dismiss for lack of personal jurisdiction, the district court may rely "upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." *Id.* (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). Plaintiffs have the burden of establishing that a district court can exercise jurisdiction over the defendant, but "that burden is 'relatively slight' where, as here, the district court rules without conducting an evidentiary hearing." *Id.* (citing *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007)). "To defeat dismissal in this context, plaintiffs need make only a prima facie showing that personal jurisdiction exists." *Id.* (citing *Air Prods. & Controls, Inc.*, 503 F.3d at 549).

In our review of a plaintiff's prima facie case, we consider pleadings and affidavits "in a light most favorable to the plaintiff," without weighing "the controverting assertions of the party seeking dismissal." *Theunissen*, 935 F.2d at 1459; *see also Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 361 (6th Cir. 2008). If the plaintiff makes a prima facie showing, remand is appropriate, but the defendant's avenues to contest personal jurisdiction are not foreclosed here—"the defendant can continue to contest personal jurisdiction by requesting an evidentiary hearing or moving for summary judgment should the evidence suggest 'a material variance from the facts' as presented by plaintiffs." *MAG IAS Holdings, Inc.*, 854 F.3d at 899 (citing *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 893 (6th Cir. 2002)).

Anwar alleges that there is a factual dispute about whether MEGlobal International was her employer, therefore raising a question of fact that should not have been disposed of at summary judgment. Anwar misapprehends the district court's action below—the district court granted MEG International's Federal Rule of Civil Procedure 12(b)(2) Motion to Dismiss, not a motion for summary judgment. Anwar cites to Supreme Court precedent in support that discusses summary judgment and judgment as a matter of law, *e.g. Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), which are not relevant here. As the district court dismissed on a motion to dismiss for lack of personal jurisdiction, we analyze under that standard.

Defendant-Appellee MEGlobal International argues that Anwar is attempting to invoke personal jurisdiction based on an erroneous conclusion that MEGlobal International is doing business as MEGlobal Americas. The parties agree, however, that in order for the district court to have possessed personal jurisdiction over MEGlobal International, Anwar would need to satisfy the burden of showing that MEGlobal International is the alter ego of Michigan resident MEGlobal Americas.

MEGlobal International is a legal entity established under and registered with the Dubai Airport Freeport regulations in Dubai, United Arab Emirates. The company distributes ethylene glycol product to customers within Asia, the Middle East, Turkey, India, and Pakistan. MEGlobal Inter-

national is a wholly owned subsidiary of MEGlobal Europe GMBH, a Swiss entity, which is in turn a wholly owned subsidiary of MEGlobal BV, a Dutch legal entity located in the Netherlands that has seven other wholly owned subsidiaries. One of those subsidiaries is MEGlobal Americas ("MEG Americas"), an entity incorporated in Delaware and registered to do business in Michigan. MEGlobal BV is a joint venture that is 50% owned by Petrochemical Industries Company, a Kuwaiti legal entity, and 50% owned by Dow Europe Holdings, B.V., a company organized and registered under Dutch law. As the district court articulated, MEG Americas is an "uncle" entity of MEGlobal International. Anwar has made both federal and state law claims, therefore this court must look to federal law and Michigan law regarding alter-ego personal jurisdiction to assess her claims.

### i. Federal law

This court has held that "[t]he alter-ego theory provides for personal jurisdiction 'if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction.'" *Indah v. U.S. S.E.C.*, 661 F.3d 914, 921 (6th Cir. 2011) (citing *Estate of Thomson*, 545 F.3d at 362). In *Estate of Thomson*, this court noted that the alter-ego theory of personal jurisdiction does not depart from traditional notions of due process:

> [F]ederal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court.

545 F.3d at 362 (quoting *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002)).[2] This court further noted that the theory is usually applied in the parent-subsidiary context, which "provides that 'a non-resident parent corporation is amenable to suit in the forum state if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction.'" *Id.* (quoting *Danton v. Innovative Gaming Corp.*, 246 F.Supp.2d 64, 72 (D. Me. 2003)). The crux of the alter-ego theory of personal jurisdiction therefore is that courts are to look for two entities acting as one.

This court has also applied the alter-ego theory to a federal ERISA claim. *Flynn v. Greg Anthony Constr. Co., Inc.*, 95 Fed. Appx. 726, 732 (6th Cir. 2003).[3] The court considered whether "state or federal common law should apply to alter-ego and 'piercing the corporate veil' claims in ERISA actions[.]" *Id.* The court determined that the D.C. Circuit instructs its lower federal courts to use the federal common law of veil-piercing when a federal interest is implicated by the decision of whether to pierce the corporate veil. *Id.* The D.C. Circuit uses a two-prong test, asking 1) whether there is "such unity of interest and ownership that the separate

<hr>

**2.** Sixth Circuit precedent is not entirely clear regarding how to apply the alter-ego theory of personal jurisdiction to federal claims. The *Indah* court cited favorably to *Estate of Thomson*, which applied Ohio law. 545 F.3d at 362.

**3.** In an unusual procedural posture, the *Flynn* Court addressed an appeal from the D.C. district court that transferred venue to the Southern District of Ohio after the D.C. district court dismissed all but one defendant for lack of personal jurisdiction. Due to that posture, the court applied D.C. Circuit precedent on appeal.

personalities of the corporation and the individual no longer exist[ ]"; and 2) "if an inequitable result will follow 'if the acts are treated as those of the corporation alone.'" *Id.* at 734 (quoting *Labadie Coal Co. v. Black*, 672 F.2d 92, 96 (D.C.Cir.1982)). Another sister circuit has characterized the alter-ego test under federal law as follows: "a plaintiff must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015), cert. denied, —— U.S. ——, 136 S.Ct. 915, 193 L.Ed.2d 793 (2016). The *Ranza* court explained the "unity of interest and ownership" prong of the test, noting that it requires:

> [A] showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former ... [exercising] pervasive control over the subsidiary ... from broad policy decisions to routine matters of day-to-day operation. Total ownership and shared management personnel are alone insufficient to establish the requisite level of control.

*Id.*

In the present case, the district court looked to *Ranza* and *Estate of Thomson* to analyze the alter-ego theory test in cases involving federal law, listing numerous factors the court considers to find personal jurisdiction under the alter-ego theory: "(1) sharing the same employees and corporate officers; (2) engaging in the same business enterprise; (3) having the same address and phone lines; (4) using the same assets; (5) completing the same jobs; (6) not maintaining separate books, tax returns and financial statements; and (7) exerting control over the daily affairs of another corporation." 545 F.3d at 362–63.[4]

▪ Accordingly, we apply a similar test to Anwar's federal claim. To satisfy the alter-ego test, Anwar must demonstrate "unity of interest and ownership" that goes beyond mere ownership and shared management personnel. *See Ranza*, 793 F.3d at 1073. For the reasons discussed below, Anwar fails to do to this.

▪ In *Flynn*, we reversed the district court holding that plaintiffs had failed to make a prima facie case for personal jurisdiction. Under the first prong, the court found that the two businesses at issue shared the same management and supervision, operated at the same location, used the same phone lines and office materials, worked in the same industry and interchanged services at times. 95 Fed.Appx. at 737. As against a third business, the court also found sufficient evidence for personal jurisdiction, noting that though less evidence was put forth, factors in favor included common control, shared business location, and incorporation to engage in a similar construction business. *Id.* In the present case, Anwar emphasizes shared board membership between MEG International and MEG Americas, including that some managers had "Global Roles" with MEGlobal entities. Anwar cites to MEG International's 2011 financial statement,[5]

---

4. As mentioned *supra*, the exact precedent in this Circuit is not perfectly clear. The factors the district court cites are derived from two cases from the Northern District of Ohio, one, of which refers back to *Flynn*, the abovementioned case applying D.C. Circuit precedent, and the other a patent case applying Federal Circuit precedent. *Microsys Computing, Inc. v. Dynamic Data Sys., LLC*, No. 4:05 CV 2205, 2006 WL 2225821, at *6 (N.D. Ohio Aug. 2, 2006) (citing *Flynn*, 95 Fed.Appx. at 736–37 and *Invacare Corp. v. Sunrise Med. Holdings, Inc.*, 74 U.S.P.Q.2d 1906 (N.D. Ohio Dec. 15, 2004)).

5. For the sake of clarity, the district court cited to Plaintiff's Supplemental Brief for this

where it is stated that MEG International "provides a source of financing to all of its sister and affiliated companies ... becoming the center of the financing structure instead of MEGlobal B.V." Anwar points to a service agreement Dow entered into with MEG International, establishing that Dow would provide services to MEG International and related MEGlobal entities. Anwar also points to a common website and engagement in a common enterprise of selling ethylene glycol.

On appeal, Anwar argues that the district court "improperly focused upon the evidence submitted in opposition by the Defendants[,]" and "relied upon arguments raised by the Defendants when reaching its erroneous conclusions," which is contrary to the standard on a motion to dismiss. Even if these facts were to make this a closer call, Anwar only alleges facts regarding ownership that partially satisfy a few different factors above. She does not allege that there are shared employees (only managers with shared roles), that the same address and phone lines are used, that the two entities complete the same jobs, or that they maintain books, tax returns, and financial statements across the two entities. Furthermore, she does not allege that MEG International controls the daily affairs of MEG Americas. Anwar's facts simply do not amount to a showing that MEG International, as the alleged parent, controls MEG Americas to such a degree that MEG International is the alter ego of MEG Americas. See Flynn, 95 Fed. Appx. at 735; see also Ranza, 793 F.3d at 1073 (citing Doe v. Unocal Corp., 248 F.3d 915, 926 (9th Cir.2001)) ("The 'unity of interest and ownership' prong of this test requires 'a showing that the parent controls the subsidiary to such a degree as to

render the latter the mere instrumentality of the former.' "). The Ninth Circuit's findings in *Ranza*, a similar case, are persuasive:

> The evidence demonstrates Nike is active in macromanagement issues but does not show that Nike directs NEON's routine day-to-day operations, and nothing suggests the entities failed to observe their separate corporate formalities. The weight of the evidence therefore persuades us Nike and NEON are not in an alter ego relationship.

793 F.3d at 1075. Similarly here, Anwar did not allege facts, aside from those demonstrating possible macromanagement, that MEG International is the alter ego of MEG Americas under federal law. Anwar fails to make a prima facie case for unity of ownership under prong one of the alter-ego theory test. As a result, we need not reach the second prong of the alter-ego theory of personal jurisdiction.

*ii. Michigan law*

▮▮▮▮ Anwar likewise fails to make a prima facie case for personal jurisdiction under Michigan law. "Michigan law presumes that, absent some abuse of corporate form, parent and subsidiary corporations are separate and distinct entities." *Seasword v. Hilti, Inc.*, 449 Mich. 542, 537 N.W.2d 221, 224 (1995). Michigan law affirmatively requires a parent-subsidiary relationship in order to impose a claim of tort liability based on that relationship. *Id.* ("[I]n order to state a claim for tort liability based on an alleged parent-subsidiary relationship, a plaintiff would have to allege: (1) the existence of a parent-subsidiary relationship, and (2) facts that justify piercing the corporate veil.") Here, it is undisputed that MEG International and

proposition, but errantly referred to a 2013 financial statement from Dow, rather than the 2011 MEG International Financial Statement.

MEG Americas are not parent and subsidiary. Thus, Anwar has failed to make a prima facie case for piercing the corporate veil. But even if Anwar was alleging a parent-subsidiary relationship, she would need to rebut the presumption by showing that MEG Americas is a "mere instrumentality" of MEG International. *See id.* The factors courts consider under Michigan law are similar to those under federal law, including shared office space, shared board membership, interconnected revenue and capital, support from the parent for the subsidiary in the event of undercapitalization, payroll management, direction of policy and decisions, and shared projects that the parent considers to be its own. *United Ins. Grp. Agency, Inc. v. Patterson*, Case No. 299631, 2011 WL 5067251, at *2 (Mich. Ct. App. Oct. 25, 2011) (citing *Seasword*, 449 Mich. at 548 n.10, 537 N.W.2d 221, and *Herman v. Mobile Homes Corp.*, 317 Mich. 233, 239–41, 26 N.W.2d 757 (1947)). Here, the district court concluded that Anwar failed to allege several of the factors above, including that MEG International receives revenue from MEG Americas' sales, that MEG Americas is undercapitalized, or that MEG International handles MEG Americas' payroll. We find that the district court properly dismissed Anwar's claims under Michigan law.

### 2. *Forum non conveniens*

■■■■ Alternatively, MEGlobal International urges dismissal on the basis of *forum non conveniens*. This doctrine allows a court with otherwise valid jurisdiction to decline to exercise such jurisdiction because of case-specific issues of fairness and convenience. *MAG IAS Holdings, Inc.*, 854 F.3d at 905 (citing *Estate of Thomson*, 545 F.3d at 364). Given that we affirm the district court's dismissal for lack of personal jurisdiction, we need not reach this issue here. *See id.* at 905 ("We have previously refused to consider *forum non conveniens*

questions yet to be addressed by a district court because fact-finding and balancing are more easily accomplished in that court."); *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1218 (6th Cir. 1989).

### B. *Dow's Summary Judgment Motion*

■■■■ We review a district court's grant of summary judgment *de novo. Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 775 (6th Cir. 2016). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 551 (6th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The moving party bears the initial burden of establishing that there are no genuine issues of material facts, which it may accomplish "by demonstrating that the nonmoving party lacks evidence to support an essential element of its case." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). In response, the nonmoving party must present "significant probative evidence" that will reveal that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). The mere existence of a scintilla of evidence in support of the non-movant's position will not suffice to avoid summary judgment. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

In the present case, Anwar appeals the district court's ruling that Dow is not liable for employment discrimination under Title VII and ELCRA. Anwar argues not that Dow was her employer, but rather, that

Dow controlled her employment through MEG International managers Ramachandran and Dr. Linda Freisler, and was therefore a joint employer. In support, Anwar argues that Ramachandran was employed by Dow through his employment with Dow Chemical Overseas Management Company ("DCOMCO"), a wholly owned subsidiary of Dow. She also argues that Freisler, to whom Anwar reported directly, was employed by Dow through her employment with Dow Deutschland, Inc., a wholly owned subsidiary of Dow. There is no dispute that both Ramachandran and Freisler were seconded (transferred) to MEG International and supervised Anwar in these roles, but the dispositive issue is the capacity in which they allegedly acted.

■■■ As we have held, "Title VII applies only to 'employers.'" 42 U.S.C. § 2000e-2; *Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 611 (6th Cir. 2003). In order to determine whether a particular entity is an employer of a Title VII plaintiff, we examine "whether the alleged employer exercises control over the manner and means of the plaintiff's work." *Id.* at 612 (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992)). With regard to parent-subsidiary relationships, there must be "sufficient indicia of an interrelationship between the immediate corporate employer and the affiliated corporation to justify the belief on the part of an aggrieved employee that the affiliated corporation is jointly responsible for the acts of the immediate employer." *Armbruster v. Quinn*, 711 F.2d 1332, 1337 (6th Cir. 1983), *abrogated on other grounds by Arbaugh v. Y & H Corp.*, 546 U.S. 500, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006). In *Armbruster*, we cited favorably to a sister circuit, in which the court stated that the parent is not responsible for a subsidiary's Title VII violations absent special circumstances. *Id.*

(citing *Watson v. Gulf & Western Industries*, 650 F.2d 990, 993 (9th Cir.1981)). The factors this court considers are "the degree of (1) interrelated operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership." *Id.*

> The showing required to warrant a finding of single-employer status has been described as highly integrated with respect to ownership and operations.... The test may also be satisfied by a showing that there is an amount of participation that is sufficient and necessary to the total employment process, even absent total control or ultimate authority over hiring decisions.

*Id.* at 1338 (citations omitted).

■■■ In examining the relationship, we must determine whether Dow exercises a degree of control that exceeds the control normally exercised by a parent corporation which is separate and distinct from the subsidiary corporate entity, in this case, MEG International. *See id.* We evaluate in the light most favorable to Anwar. *See id.* As noted *supra*, Anwar presents evidence that Ramachandran is employed by DCOMCO, a wholly owned subsidiary of Dow, and that Freisler is employed by Dow Deutschland, Inc., another wholly owned subsidiary of Dow. She also establishes that both were seconded to MEG International. But while each is employed by or works for a Dow subsidiary, Anwar puts forth scanty evidence of an interrelated operation, common management, or centralized control. Moreover, she fails to establish special circumstances for finding that the parent, Dow, should be liable for any alleged wrongdoing of the subsidiary, MEG International. In her response to Dow's motion to dismiss, Anwar simply stated the above-listed facts, without any further support to justify that Dow should be jointly responsible. On appeal, Anwar

reiterates the evidence she adduced before the district court, and notes, without explanation, that the district court "glossed over" evidence demonstrating extraordinary control by Dow. Anwar pleads no facts that rebut the presumption that Ramachandran was acting in his capacity as MEG International's CEO and president. Ultimately, even if Ramachandran was co-employed by MEG International and Dow through his employment with DCOMCO, Anwar fails to put forth evidence that her employment was controlled by Dow. Therefore, summary judgment on Anwar's Title VII claim was appropriate.

 Anwar's claim under ELCRA was also properly dismissed at summary judgment. To determine whether an employment relationship exists, Michigan courts use the "economic realities test." *Varlesi v. Wayne State University*, 909 F.Supp.2d 827, 843–44 (E.D. Mich. 2012). The goal is to determine whether an individual or entity is the "employer" of a given employee. *Clark v. United Techs. Auto., Inc.*, 459 Mich. 681, 594 N.W.2d 447, 450 (1999). Michigan courts look at four factors: "(1) [the] control of a worker's duties, (2) the payment of wages, (3) the right to hire and fire and the right to discipline, and (4) the performance of the duties as an integral part of the employer's business towards the accomplishment of a common goal." *Id.* at 451. (citations omitted). In *Clark*, the Supreme Court of Michigan reiterated that "the general rule in Michigan is that separate entities, including that of corporation and shareholder, will be respected." *Id.* (citing *Wells v. Firestone Tire and Rubber Co.*, 421 Mich. 641, 364 N.W.2d 670, 674 (1984)). When employees work for two different employers, "the separate existence of each entity is respected." *Id.* at 452. Further, the director or officer of a parent and a subsidiary is presumed to "change hats to repre-

sent the two corporations separately." *United States v. Bestfoods*, 524 U.S. 51, 69, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998).

 Anwar must rebut the presumption that Ramachandran and Freisler were acting in their capacities as MEG International's president and CEO and MEG International's chief legal counsel, respectively. In her attempt to rebut this presumption, Anwar argues that Ramachandran's performance is evaluated by Dow and that he has reporting duties to Dow senior leadership. Anwar provides no evidence whatsoever regarding Freisler, except that she has listed her employer address on the State Bar of Michigan directory as Dow's address in Michigan. None of these facts rebut the presumption that both were acting in their capacities as MEG International employees when the alleged acts of discrimination occurred. Under Michigan law, the separate entities will be respected unless "a contrary determination would be inequitable under the facts of th[e] case." *Clark*, 594 N.W.2d at 451. (citation omitted). We do not find that a contrary result would be inequitable. Therefore, summary judgment on Anwar's ELCRA claim was appropriate.

Given that we find that Dow was not Anwar's employer, we reject her claims for contractual and promissory estoppel.

### C. Discovery Limitations

In the alternative, Anwar argues that the district court erred by granting summary judgment without allowing additional discovery. Specifically, she argues that the district court erred when it granted Dow's motion for protective order against Anwar's request for two additional depositions, and the magistrate judge erred in denying Anwar's motion to compel written discovery.

 · We review a district court's decisions regarding discovery matters for abuse of discretion. *Dortch v. Fowler*, 588 F.3d 396, 400 (6th Cir.2009) (citations omitted). "Reversal is proper only if we are firmly convinced of a mistake that affects substantial rights and amounts to more than harmless error." *Himes v. United States*, 645 F.3d 771, 782 (6th Cir. 2011). Under Federal Rule of Civil Procedure 26(c)(1), a district court may grant a protective order preventing the production of discovery to protect a party or entity from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). We likewise review the grant of a protective order for abuse of discretion. *Serrano v. Cintas Corp.*, 699 F.3d 884, 899–900 (6th Cir. 2012).

 Relevantly here, the district court intentionally limited discovery to the jurisdictional issues against Defendants-Appellees: "(1) investigating Anwar's allegations that MEG International does business as MEG Americas and that the MEGlobal subsidiaries act as a single entity and (2) Anwar's allegation that Ramachandran and other MEG International managers are employed by Defendant Dow." As we have held, "district courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce." Fed. R. Civ. P. 26(b)(2); *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305, 2007 WL 107953 (6th Cir. 2007). We have noted that a plaintiff should have access to information necessary to establish her claim, but that a plaintiff may not be permitted to "go fishing"; the trial court retains discretion. *Id.* Regarding protective orders, we have stated that prohibiting the deposition of a witness who "ha[s] no personal knowledge of the events or investigation underlying the case" and who "[cannot] provide rele-

vant testimony" is appropriate. *Graves v. Bowles*, 419 Fed.Appx. 640, 645–46 (6th Cir. 2011); *accord Smith v. Dowson*, 158 F.R.D. 138, 140–42 (D. Minn. 1994) (finding that "a showing of irrelevancy of proposed discovery can satisfy the 'good cause' requirement of Rule 26(c)") (citations omitted).

Anwar argues that the district court abused its discretion when denying her request to take depositions of Henry Roth, former President and CEO of MEG International, and Kimberly Wood, former Fraud Investigator for Dow. Anwar's discovery requests are of former employees, removed from their employment by multiple years, and Anwar makes no argument that any information from either would relate to the narrow jurisdictional questions for which discovery was narrowly permitted. Anwar does not allege that either has personal knowledge regarding the events or of the investigation underlying the case. Further, Anwar makes no argument as to "how further discovery would rebut the movant's showing of the absence of a genuine issue of material fact." *Himes*, 645 F.3d at 783. The district court granted limited discovery, and Anwar fails to show that the information would change any result or that the depositions she sought to take were within the district court's limited discovery parameters. Therefore, there was no abuse of discretion.

Anwar also argues that the district court erred when it denied her motion to compel written discovery and her Rule 56(d) request for additional written discovery. As noted *supra*, we review a district court's decision on a discovery matter for abuse of discretion. *Fowler*, 588 F.3d at 400. Beyond arguing that the documents were "relevant", Anwar makes no argument that the district court abused its discretion as to either ruling. Upon this court's review, we do not find that the district court erred.

## III.

For these reasons, we **AFFIRM**.