J-A02021-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | |
|---|---|
| JOHN WILLIAMS, AN INCAPACITATED PERSON, BY BRANDY WILLIAMS, GUARDIAN (AD LITEM); JOHN WILLIAMS, BRANDY WILLIAMS | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | No. 938 WDA 2017 |
| OAO SEVERSTAL, SEVERSTAL RESOURCES, PBS COALS, INC; MINE SAFETY APPLIANCES COMPANY | |
| v. | |
| TRI-STATE SAFETY TRAINING SERVICES | |
| APPEAL OF:  OAO SEVERSTAL | |

Appeal from the Order May 31, 2017
In the Court of Common Pleas of Westmoreland County
Civil Division at No(s):  1396 of 2014

BEFORE:  BOWES, J., OLSON, J., and KUNSELMAN, J.

CONCURRING AND DISSENTING MEMORANDUM BY OLSON, J.:

FILED OCTOBER 03, 2019

I respectfully concur and dissent from the Learned Majority's memorandum. I concur in the Majority's conclusion that Appellee, John Williams (Williams), was not required to plead facts in his complaint that support the exercise of personal jurisdiction over Appellant, OAO Severstal.

I am unable to agree, however, with the Majority's conclusion that the trial court correctly overruled Appellant's preliminary objections on the basis that Appellant and its subsidiary, PBS Coals, Inc. (PBS), were so intertwined that PBS qualified as Appellant's instrumentality or alter ego and, as such, Williams' cause of action arose from Appellant's forum-related contacts.[1]

As I shall explain below, even if I were to conclude (as the Majority does) that PBS served as Appellant's alter ago, this logically would imply that Appellant is subject to general jurisdiction in Pennsylvania since an alter ego finding permits a court to exercise jurisdiction over the parent to the same extent it may exercise jurisdiction over the subsidiary. The Majority, however, retreats from the logical and full implication of its determination and holds, in the face of its alter ego finding, that the trial court possessed only specific jurisdiction over Appellant. In addition, I believe the record establishes nothing more than a conventional parent-subsidiary relationship between Appellant and PBS in the context of a vertically integrated

---

[1] Of course, I also disagree with the conclusions set forth in the concurring memorandum in which my learned colleague asserts that the trial court did not need to examine facts beyond Williams' complaint and Appellant's preliminary objections, including evidence obtained through depositions or other sources, because Appellant did not raise genuine issues of fact or shift the burden of proof to Williams since it did not deny that it had agents in Pennsylvania through which it acted vicariously. In my view, the entire thrust of Appellant's preliminary objections was to challenge the conclusion that PBS qualified as Appellant's agent or alter ego in Pennsylvania.

organization[2] which does not – and ought not – erect an agency or alter ego link between the two entities.  Hence, I would hold that the record is insufficient to confer jurisdiction over Appellant.

The Supreme Court of the United States distinguished the concept of specific personal jurisdiction from general personal jurisdiction:

> It has long been established that the Fourteenth Amendment limits the personal jurisdiction of state courts.  Because a state court's assertion of jurisdiction exposes defendants to the State's coercive power, it is subject to review for compatibility with the Fourteenth Amendment's Due Process Clause, which limits the power of a state court to render a valid personal judgment against a nonresident defendant.  The primary focus of the Court's personal jurisdiction inquiry is the defendant's relationship to the forum State.
>
> The Court's decisions have recognized two types of personal jurisdiction: "general" (sometimes called "all-purpose") jurisdiction and "specific" (sometimes called "case-linked") jurisdiction.  For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.  A court with general jurisdiction may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different State.  But only a limited set of affiliations with a forum will render a defendant amenable to general jurisdiction in that State.

_____

[2] The purpose of most, if not all, vertically-integrated business organizations is to facilitate the supply of goods or services from the subsidiary to the parent.  That is all that occurred here.  I fail to see why the Majority recasts this ordinary feature of such institutions into the type of extraordinary control factor that supports an alter ego finding.  I fear that such an interpretation of the alter ego test will cast too wide a net in sorting through which subsidiaries function according to conventional business models and which are subject to such extraordinary control that they should be deemed mere instrumentalities of their parent corporations.

> Specific jurisdiction is very different. In order for a state court to exercise specific jurisdiction, the suit must arise out of or relate to the defendant's contacts with the forum. In other words, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation. For this reason, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.

Bristol-Myers Squibb Co. v. Superior Court of Cal., S.F. Cty., 137 S.Ct. 1773, 1779-1780 (2017) (cleaned up).

If a subsidiary corporation is deemed to be an alter ego of its parent corporation, then the forum-related activities of the subsidiary relate back to the parent. In such cases, a forum state's jurisdiction over the parent corporation mirrors the jurisdiction the state court possesses over the subsidiary alter ego.[3] Here, PBS is subject to general jurisdiction before our trial courts because it regularly conducts mining operations in Pennsylvania and is domiciled in the Commonwealth. See 42 Pa.C.S.A. § 5301(a)(2). Under the facts of this case, then, if PBS serves as Appellant's alter ego, Appellant would be subject to general jurisdiction in this Commonwealth.

---

[3] The Majority conflates the principles associated with general and specific jurisdiction. In some cases, an alter ego finding would lead only to Pennsylvania courts exercising specific jurisdiction over a corporation. For example, assume a situation where a French subsidiary corporation served as an alter ego for a German parent corporation. If the French company were subject to specific jurisdiction in Pennsylvania, the German corporation would similarly be subject to specific jurisdiction in Pennsylvania.

Because of the highly significant legal consequences that flow from finding an alter ego relationship, the test for establishing such a connection is very stringent. The Majority relies on federal district court cases decided after our Supreme Court's decision in Botwinick v. Credit Exch., Inc., 213 A.2d 349 (Pa. 1965). In my view, Botwinick, subsequent Pennsylvania appellate case law, and the majority of persuasive federal authority indicate that Pennsylvania courts may not exercise general jurisdiction over Appellant.

In Botwinick, our Supreme Court held that the trial court could not exercise general jurisdiction over the defendant under an alter ego theory. It explained that "to the extent that domination and control by the parent corporation renders the subsidiary a mere instrumentality of the parent; under such extreme circumstances the parent corporation may be held to be doing business within the state under the facade of the subsidiary." Id. at 354 (emphasis added).

After Botwinick, this Court reaffirmed the principle that it is difficult to establish general jurisdiction under an alter ego theory. In Lit v. Storer Broad. Co., 269 A.2d 393 (Pa. Super. 1970), an employee argued that his employer's parent company was subject to general jurisdiction based on an alter ego theory. Despite the fact that the "parent company wholly own[ed] the subsidiary," this Court held that Pennsylvania courts could not exercise general jurisdiction under an alter ego theory. Id. at 395.

The Commonwealth Court has, relatively recently, explained why Pennsylvania courts could not exercise jurisdiction over a parent corporation. In Commonwealth ex rel. Pappert v. TAP Pharm. Products, Inc., 868 A.2d 624 (Pa. Cmwlth. 2005) (en banc), a parent company appointed the subsidiary's executives. These executives were also executives or employees of the parent. The Commonwealth Court held this was insufficient for Pennsylvania courts to exercise personal jurisdiction over the parent under an alter ego theory.[4] Id. at 632.

The Majority relies on a single Pennsylvania case, and several federal district court decisions, in support of the concept that Pennsylvania state courts have jurisdiction over Appellant. This reliance is misplaced. For the reasons set forth below, the decisions relied on by the Majority are distinguishable from the case at bar. Furthermore, there is persuasive authority indicating that Pennsylvania courts may not exercise general jurisdiction over Appellant.

First, the Majority does not cite to any cases holding that a corporation is subject to general jurisdiction under an alter ego theory since the Supreme Court of the United States' decision in BNSF Ry. Co. v. Tyrrell, 137 S.Ct. 1549 (2017). BNSF is the latest in a line of decisions greatly

---

[4] The Commonwealth Court did not explicitly state whether an alter ego finding would permit the exercise of specific jurisdiction or general jurisdiction over the parent.

limiting states' ability to hold corporations subject to general jurisdiction. E.g. Daimler AG v. Bauman, 571 U.S. 117 (2014).

Second, the lone state court decision the Majority relies on is distinguishable. At the time this Court decided Barber v. Pittsburgh Corning Corp., 464 A.2d 323 (Pa. Super. 1983), cert. denied, 467 U.S. 1205 (1984), the "trend in judicial thought [] favor[ed] the assertion of jurisdiction." Id. at 332. As noted above, BNSF and Daimler show that the trend in judicial thought now would disfavor such assertion of jurisdiction. Moreover, although the alter ego analysis in Barber is perfunctory, there are indications that the parent-subsidiary relationship in that case was greater than the relationship in the case at bar. Specifically, the parent "exercised full control over" the subsidiary. Id. at 331. When a corporation can expend $9,000,000 without authorization from its parent, the element of overmastering control of the subsidiary by the parent is indisputably absent. See Majority Memorandum at 22 ("Appellant maintained financial oversight of its subsidiary but only required formal approval of expenditures exceeding ten million dollars. … Thus, smaller projects like the one on which [Williams] worked typically did not require Appellant's authorization."), citing N.T. Deposition of Dmitry Goryachev, 7/20/16, at 21, 31, and 35.

Third, the federal cases upon which the Majority relies are distinguishable from the case at bar. In Hooper v. Safety-Kleen Sys.,

Inc., 2016 WL 7212586 (W.D. Pa. Dec. 13, 2016), the parent and the subsidiary "share[d] corporate headquarters." Id. at *7. In this case, PBS' and Appellant's headquarters are thousands of miles apart. Hence, day-to-day control was easy in Hooper while it is difficult in this case. Moreover, in Hooper the subsidiary served "as the corporate headquarters staff for" many of the parent's subsidiaries. Hooper, 2016 WL 7212586 at *7. In this case, there is no evidence that PBS served as the corporate headquarters for Appellant's other subsidiaries.

Seven years earlier, in In re Chocolate Confectionary Antitrust Litig., 641 F.Supp.2d 367 (M.D. Pa. 2009), the court addressed three allegations of a subsidiary serving as a parent's alter ego. With respect to that parent-subsidiary analysis, Chocolate Confectionary is distinguishable from this case. The parent "exercised centralized control over the day-to-day management" of the subsidiary. Id. at 401 (cleaned up). It did so "to the exclusion of [the subsidiary's] board[] of directors." Id. at 402. As noted above, there is no such day-to-day management of PBS by Appellant in this case. See Majority Memorandum, at 26, citing N.T., 9/9/15, at 73, 81. The CEO of the subsidiary in Chocolate Confectionary "could not identify a single board member" of the subsidiary. Chocolate Confectionary, 647 F.Supp.2d at 401. There is no evidence that is true in the case sub judice. See Majority Memorandum, at 26, citing N.T., 9/9/15,

at 70-71, 81-82. Thus, the level of control in this case is less than that in Chocolate Confectionary.

In In re Latex Gloves Products Liab. Litig., 2001 WL 964105 (E.D. Pa. Aug. 22, 2001), the parent and the subsidiary "used the same employees interchangeably[.]" Id. at *5. In this case, there is no indication that the employees were interchangeable. Although there was some cross-over between Appellant's employees and PBS' employees, the employees did not freely float between the two corporations. The court in Latex Gloves also implicitly found that the parent dictated all facets of the subsidiary's business. As noted above, that is not present in this case. I would conclude that the federal court cases relied on by the Majority are distinguishable.

Fourth, the Majority does not focus on the key parts of In re Enter. Rent-A-Car Wage & Hour Employment Practices Litig., 735 F.Supp.2d 277 (W.D. Pa. 2010), aff'd, 683 F.3d 462 (3d Cir. 2012). In that case, the court held that, in order to find that a subsidiary is the alter ego of a parent, the parent must have "control over the internal workings or day-to-day operations of its subsidiar[y]." Id. at 324, quoting Hoffman v. Tyco Int'l, Ltd., 2006 WL 3759709, *5 (E.D. Pa. Dec. 18, 2006). Because that was lacking in Enterprise, the parent did not exercise the "extraordinary level of control" necessary for a finding of alter ego. Id. In this case, the Majority concedes that Appellant does not control PBS' internal workings or

day-to-day operations. Cf Majority Memorandum, at 22 (PBS could spend up to $10,000,000 without Appellant's approval). Hence, Enterprise indicates that PBS is not Appellant's alter ego.

Fifth, federal decisions issued after BNSF show that general jurisdiction is not proper in this case. There are very few decisions issued after BNSF addressing whether a court has personal jurisdiction, either specific or general, over a parent corporation because of a subsidiary alter ego. One of those cases is Anwar v. Dow Chem. Co., 876 F.3d 841 (6th Cir. 2017).[5]

In Anwar, the Sixth Circuit found that a domestic affiliate was not the alter ego of a foreign corporation. The court noted that the plaintiff, in arguing that the affiliate was the foreign corporation's alter ego, pointed to, inter alia, shared board membership and common managers, the foreign corporation being a source of funding for the affiliate, and the common website used by both companies. Id. at 849-850. In reaching the conclusion that the domestic affiliate was not the alter ego of the foreign corporation, the court stated:

_____

[5] Although Anwar did not apply Pennsylvania law, it applied federal law. Federal law permits the exercise of personal jurisdiction to the extent permitted by the Due Process Clause of the Fifth Amendment. Similarly, Pennsylvania's long-arm statute permits the exercise of jurisdiction to the extent permitted by the Due Process Clause of the Fourteenth Amendment. See 42 Pa.C.S.A. § 5322(b).

> [Plaintiff] only alleges facts regarding ownership that partially satisfy a few different factors [needed to satisfy the alter-ego test]. She does not allege that there are shared employees (only managers with shared roles), that the same address and phone lines are used, that the two entities complete the same jobs, or that they maintain books, tax returns, and financial statements across the two entities. Furthermore, she does not allege that [the foreign corporation], as the alleged parent, controls [the domestic affiliate] to such a degree that [the foreign corporation] is the alter ego of [the domestic affiliate].

Id. at 850. Moreover, the court noted that mere macromanagement of a subsidiary by a parent does not demonstrate that the subsidiary is the parent's alter ego. Id. (citation omitted). Instead, the parent must manage the day-to-day operations of the subsidiary. See id. Again, there is no such day-to-day management of PBS by Appellant in this case.

Federal district court decisions in light of BNSF show that the Majority's reasoning for finding jurisdiction over Appellant is flawed. In Kellman v. Whole Foods Mkt., Inc., 313 F.Supp.3d 1031 (N.D. Cal. 2018), the court rejected the plaintiffs' theory that two subsidiary corporations were alter egos of their parent corporation.[6] The court noted that "A parent corporation may be directly involved in financing and macromanagement of its subsidiaries without exposing itself to a charge that

_____

[6] California is one of two states the Supreme Court of the United States has recently chided for exercising jurisdiction over corporations beyond that permitted by the Fourteenth Amendment. Cf. Bristol-Myers, 137 S.Ct. 1773 (reversing trial court's finding that corporation could be subject to specific jurisdiction in California). Hence, California law is not narrower than Pennsylvania law with respect to entities over which its courts may exercise specific jurisdiction.

each subsidiary is merely its alter ego." Id. at 1047 (cleaned up). The Majority focuses on the $200,000,000 loan that Appellant gave PBS, i.e., financing. See Majority Memorandum, at 23. Similarly, the Majority uses Appellant's macromanagement of PBS to find that PBS is Appellant's alter ego. As the court in Kellman noted, however, this is inapposite. A parent must be allowed to finance and macromanage its subsidiaries without fear of being subject to general jurisdiction in multiple jurisdictions.

In Ezell v. Medtronic plc, 2018 WL 1100901 (W.D. La. Feb. 6, 2018), adopted, 2018 WL 1096864 (W.D. La. Feb. 28, 2018), the plaintiffs again alleged that a subsidiary served as the parent's alter ego. The court rejected that argument relying on the fact that (1) the parent and subsidiary were not located in the same office; (2) the parent did not control the day-to-day operations of the subsidiary; and (3) the parent's and subsidiary's "finances [were] formally entered in separate ledgers." Id. at *6. Based on these factors, the court found that the parent was not subject to specific jurisdiction under an alter ego theory. Id. at *7. The same three factors are present in this case. Accordingly, we conclude that Pennsylvania courts lack general jurisdiction over Appellant.[7]

_____

[7] If we were to find that PBS was Appellant's alter ego thereby subjecting Appellant to general jurisdiction in Pennsylvania, a Ukranian citizen, who has never been to the continental United States, could sue Appellant in the Court of Common Pleas of Pike County for a tort committed in Alaska. Cf. Bristol-Myers, 137 S.Ct. at 1780 (explaining that when a court has general
(Footnote Continued Next Page)

Because courts in this Commonwealth lack general jurisdiction over Appellant, courts of this Commonwealth may only exercise personal jurisdiction over Appellant if the requirements for specific jurisdiction are satisfied.

Specific jurisdiction is governed by Pennsylvania's long-arm statute which provides, in relevant part:

> (a) General rule.--A tribunal of this Commonwealth may exercise personal jurisdiction over a person (or the personal representative of a deceased individual who would be subject to jurisdiction under this subsection if not deceased) who acts directly or by an agent, as to a cause of action or other matter arising from such person:
>
> (1) Transacting any business in this Commonwealth. Without excluding other acts which may constitute transacting business in this Commonwealth, any of the following shall constitute transacting business for the purpose of this paragraph:
>
> (i) The doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object.
>
> (ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object with the intention of initiating a series of such acts.
>
> (iii) The shipping of merchandise directly or indirectly into or through this Commonwealth.
>
> (iv) The engaging in any business or profession within this Commonwealth, whether or not such business requires license or approval by any government unit of this Commonwealth.

(Footnote Continued) ——————————————

jurisdiction it "may hear any claim against the defendant, even if all the incidents underlying the claim occurred in a different State").

(v) The ownership, use or possession of any real property situate within this Commonwealth.

(2) Contracting to supply services or things in this Commonwealth.

(3) Causing harm or tortious injury by an act or omission in this Commonwealth.

(4) Causing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth.

(5) Having an interest in, using, or possessing real property in this Commonwealth.

(6)(i) Contracting to insure any person, property, or risk located within this Commonwealth at the time of contracting.

(ii) Being a person who controls, or who is a director, officer, employee or agent of a person who controls, an insurance company incorporated in this Commonwealth or an alien insurer domiciled in this Commonwealth.

(iii) Engaging in conduct described in section 504 of the act of May 17, 1921 (P.L. 789, No. 285), known as The Insurance Department Act of 1921.1

(7) Accepting election or appointment or exercising powers under the authority of this Commonwealth as a:

(i) Personal representative of a decedent.

(ii) Guardian of a minor or incapacitated person.

(iii) Trustee or other fiduciary.

(iv) Director or officer of a corporation.

(8) Executing any bond of any of the persons specified in paragraph (7).

(9) Making application to any government unit for any certificate, license, permit, registration or similar instrument or authorization or exercising any such instrument or authorization.

(10) Committing any violation within the jurisdiction of this Commonwealth of any statute, home rule charter, local ordinance or resolution, or rule or regulation promulgated thereunder by any government unit or of any order of court or other government unit.

(b) Exercise of full constitutional power over nonresidents.--In addition to the provisions of subsection (a) the jurisdiction of the tribunals of this Commonwealth shall extend to all persons who are not within the scope of section 5301 (relating to persons) to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States.

(c) Scope of jurisdiction.--When jurisdiction over a person is based solely upon this section, only a cause of action or other matter arising from acts enumerated in subsection (a), or from acts forming the basis of jurisdiction under subsection (b), may be asserted against him.

42 Pa.C.S.A. § 5322. Thus, in order to exercise specific jurisdiction under Pennsylvania's long-arm statute, a trial court must find that the defendant engaged in an act specified under section 5322(a)(1) through (9) or the defendant had sufficient minimum contacts with Pennsylvania to trigger specific jurisdiction pursuant to section 5322(b). In addition, the trial court may exercise specific jurisdiction only if it determines that the injuries complained of arose from the defendant's forum-related contacts.

Williams argues, and the trial court determined, that 20 identified contacts by Appellant satisfied section 5322(a) and/or (b). The contacts center on Appellant's acquisition of PBS as a mining asset that supports

Appellant's steel manufacturing operations. As we shall explain, however, Williams' injury did not arise out of these identified activities. Hence, the trial court erred in concluding it had specific jurisdiction. See 42 Pa.C.S.A. § 5322(c); McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 881 (2011).

Williams first contends that PBS' status as Appellant's subsidiary and PBS' use of Appellant's logo on its stationary and website evidenced the necessary contacts under section 5322(a) and/or (b). Both of these arguments are premised on Appellant's and PBS' parent-subsidiary relationship. A parent-subsidiary relationship, however, does not ipso facto demonstrate that injury arises out of the parent's management of the subsidiary. See Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 930 (2011), citing Brilmayer & Paisley, Personal Jurisdiction and Substantive Legal Relations: Corporations, Conspiracies, and Agency, 74 Cal. L. Rev. 1, 14 and 29–30 (1986); see also Karaa v. Aramoonie, 2018 WL 1373958, *5 (Tex. App. Mar. 19, 2018) (cleaned up) ("the degree of control exercised by the parent must be greater than that normally associated with common ownership and directorship"); Stonepeak Partners, LP v. Tall Tower Capital, LLC, 231 So.3d 548, 556 (Fla. App. 2017) (no specific jurisdiction over a parent unless the corporate veil is pierced); Hard Candy, LLC v. Hard Candy Fitness, LLC, 106 F.Supp.3d 1231, 1240 (S.D. Fla. 2015) (citation omitted) ("a foreign parent corporation is not subject to the jurisdiction of a forum state merely because a subsidiary is doing business

there"); Kehm Oil Co. v. Texaco, Inc., 537 F.3d 290, 301 (3d Cir. 2008) (citation omitted) (even when parent is sole owner of subsidiary the parent is not ipso facto subject to general jurisdiction in the subsidiary's home state); Ismail v. Volvo Group N. Am., Inc., 2017 WL 5652562, *3 (C.C.P. Philadelphia), aff'd, 2018 WL 1126249 (Pa. Super. Mar. 2, 2018) (unpublished judgment order).

Williams relies on Harris v. NGK N. Am., Inc., 19 A.3d 1053 (Pa. Super. 2011) in support of his argument that this parent-subsidiary relationship was sufficient under section 5322(a) and/or (b). Harris, however, is factually distinguishable from the case at bar. In Harris, an estate argued that a decedent suffered from chronic beryllium disease caused by living in close proximity to a beryllium plant. That beryllium plant was operated by a subsidiary of a foreign corporation. On appeal, the foreign corporation argued that the trial court lacked specific jurisdiction. This Court rejected that argument for two reasons not present in the case at bar. First, the parent (foreign) corporation supplied the beryllium to the subsidiary (domestic) corporation. It was this beryllium that allegedly caused the decedent's injuries. In this case, by contrast, Williams does not argue that Appellant had direct involvement in the design, construction, inspection, or material supply for the coal bin where Williams was injured.

More importantly, in Harris the evidence showed that the parent substantially controlled the day-to-day operations of the subsidiary. See id.

at 1061-1062. In this case, the evidence indicates that PBS fully controlled its day-to-day operations. See N.T., 7/20/16, at 46. Hence, the two factors that led this Court to find specific jurisdiction in Harris are not present in the case sub judice. Instead, Williams and the trial court rely on the mere parent-subsidiary relationship between Appellant and PBS. The generalized and ever-present features of a parent-subsidiary relationship, particularly within the context of vertically-integrated organizations, are insufficient to subject Appellant to specific jurisdiction in the Commonwealth of Pennsylvania.

In my view, the record does not support a finding that Williams' injuries arose out of the parent-subsidiary relationship between PBS and Appellant. As noted above, PBS was not Appellant's alter ego. Moreover, the parent-subsidiary relationship between Appellant and PBS was irrelevant with respect to the construction of the coal bin and the hiring of a contractor to construct the coal bin. Hence, the trial court erroneously relied on the parent-subsidiary relationship when finding it could exercise specific jurisdiction over Appellant.

Next, the trial court relied on PBS' use of Appellant's logo on its stationary and website in support of exercising specific jurisdiction over Appellant. Again, use of a logo does not ipso facto indicate that injuries caused by a subsidiary's actions arose from the subsidiary's use of the parent's logo. E.g., Horowitz v. AT&T Inc., 2018 WL 1942525, *9 (D.N.J.

Apr. 25, 2018) ("common marketing image and joint use of trademark logos" insufficient to subject the parent to general jurisdiction); Barry v. Talpa Holding, N.V., 2015 WL 6001032, *7 (Cal. App. Oct. 15, 2015) (use of a single website by both parent and subsidiary insufficient to subject the parent to general jurisdiction); Enterprise, 735 F.Supp.2d at 323 ("common marketing image and joint use of trademarked logos fail to render" parent subject to general jurisdiction); Von Grabe v. Sprint PCS, 312 F.Supp.2d 1285, 1301 (S.D. Cal. 2003). Hence, the trial court erred in concluding this was sufficient to exercise specific jurisdiction over Appellant pursuant to Pennsylvania's long-arm statute.

Ancillary to this argument, Williams contends that an insurance contract covering the PBS plant indicates the requisite minimum contacts to permit the trial court's exercise of specific jurisdiction over Appellant. A careful review of Williams' argument, however, indicates that this is just another generalized feature of the parent-subsidiary relationship between Appellant and PBS. Specifically, Appellant was covered by the insurance contract because of form language providing that the insurance policy covers PBS' parent and affiliated entities. See Williams' Brief at 26 n.6 and 27 n.7. Williams does not argue that the insurance policy specifically named Appellant. Instead, it merely referenced any parent or related entity.

I find instructive the reasoning of the United States District Court for the Eastern District of North Carolina in KCHM, Inc. v. Mid-Continent Cas.

Co., 264 F.Supp.3d 697 (E.D.N.C. 2017). In that case, a subsidiary in Oklahoma had an insurance policy which covered an accident that occurred in West Virginia. The policy listed the Oklahoma corporation's parent as a conditional insured. There was, however, no negotiation between the parent and the insurance company regarding the policy. Instead, like the case at bar, boilerplate policy language was employed to cover the subsidiary's parent corporation. The court concluded that the insurance contract was insufficient to create specific jurisdiction. See id. at 701-702. The court distinguished the scenario in KCHM from cases where a parent company negotiated the insurance contract to cover activities in a specific state. See id. In this case, there was no evidence of negotiations between Appellant and the insurer and/or Merit Contracting.

Williams' construction of Pennsylvania's long-arm statute would violate the Due Process Clause of the Fourteenth Amendment. Permitting the trial court to assert compulsory process over a parent corporation based solely on a subsidiary's additional insured designation would defeat the requirement of purposeful ailment which has long been part of the law of specific jurisdiction. Hence, I would reject Williams' argument, adopted by the trial court, that Appellant is subject to specific jurisdiction in Pennsylvania based on insurance coverage it did not purchase.

In addition to these factors, the trial court cited, without analyzing, 18 factors Williams listed in support of finding specific jurisdiction over

Appellant. Cf. Williams' Brief at 10-17 (listing the factors). None of these factors permits the exercise of specific jurisdiction over Appellant.

The Majority argues that a line of credit from Appellant to PBS constituted sufficient contact with Pennsylvania to enable the trial court to exercise specific jurisdiction over Appellant. Similarly, the Majority contends that Appellant's favorable credit treatment towards PBS permitted the trial court to exercise specific jurisdiction over Appellant. There is nothing, however, in the record to support a finding that Williams' injuries arose from this line of credit or the favorable credit treatment, and the Majority points to no facts supporting such a contention. In other words, it was not shown that the line of credit and favorable credit treatment facilitated constructing the coal bin or permitted PBS to hire Merit Contracting.

The Majority reasons that the money freed PBS to use funds to build the coal bin in question. This argument is unbounded. Taken to its logical conclusion, an individual living in Alaska who loaned money to PBS for a project in Montana could be haled into a Pennsylvania court. This is not permitted by Pennsylvania's long-arm statute. Hence, I would reject the fungibility argument as meritless.

I would also reject the argument that Appellant's management of PBS, and statements related thereto, enabled the trial court to exercise specific jurisdiction. Again, there is no evidence that Appellant managed the construction of the coal bin and/or the hiring of Merit Contracting. There is

no evidence of statements by Appellant related to the coal bin and/or the hiring of Merit Contracting. Instead, Williams relies on general statements regarding Appellant's corporate governance of PBS. See Williams' Brief at 12-13. This is insufficient for specific jurisdiction. Cf. Andresen v. Diorio, 349 F.3d 8, 12 (1st Cir.2003) (parent corporation's financial and policy control over subsidiary was not sufficient to support general jurisdiction absent showing that subsidiary was parent's alter ego). The only evidence presented indicates that Appellant did not control PBS' day-to-day operations. This case falls far short of the management and control criteria needed to demonstrate specific jurisdiction.

Williams' injuries did not arise from PBS' submission of reports to, and monthly meetings with, Appellant. Williams does not aver that Appellant required PBS to submit reports regarding the construction of the Shade Creek coal bin or the hiring of Merit Contracting to perform that work. Instead, the reports were overall performance reports and forecasts, i.e., company-wide reports. There is nothing to suggest that the meetings between Appellant and PBS addressed the coal bin and/or the hiring of Merit Contracting. The same rationale applies to PBS submitting a proposed budget to Appellant. Williams does not aver, nor is there support in the record for a finding, that Appellant required PBS to submit a detailed budget relating to the construction of the coal bin. Williams' injuries, therefore, did not arise from the budgetary submissions.

This is no factual support for finding that Williams' injuries arose from PBS' chief financial officer's presentations to Appellant or Appellant's accounting and auditing practices. These presentations and audits did not discuss the construction of the subject coal bin, nor did the accounting reports examine the financial ramifications of construction of this coal bin.

Williams' argument that his injuries arose from PBS' executives being paid by a third-party corporation is without merit. No evidence supports a finding that this executive pay was tied to the construction of the coal bin or the hiring of Merit Contracting. Likewise, Williams' injuries did not arise from talks between executives of the two companies and/or executives leaving Appellant to work for PBS. There is no evidence that the coal bin or the hiring of Merit Contracting was ever discussed during these meetings. Williams' passing argument that his injuries arose from a single employee's LinkedIn profile is meritless. There is nothing to link Lori Mason's profile with the injuries sustained by Williams, the construction of the coal bin, and/or the hiring of Merit Contracting.

Finally, Williams' injuries did not arise from any prior litigation with which PBS and/or Appellant were involved. Williams' injuries ipso facto could not have arisen from this litigation. Hence, Williams' arguments that the trial court had specific jurisdiction over Appellant because of its control of PBS' litigation is frivolous.

All 20 factors relied on by Williams and the trial court are "factors merely showing the amount of control typical in a parent-subsidiary relationship." Viega GmbH v. Eighth Jud. Dist. Ct., 328 P.3d 1152, 1160 (Nev. 2014) (cleaned up). Williams admits this in his brief before this Court. See Williams' Brief at 8, quoting Trial Court Opinion, 4/6/17, at 6 (The 20 factors he argues prove that Appellant was subject to specific jurisdiction in Pennsylvania dealt with "owning and managing PBS[.]"). In other words, these 20 factors did not give rise to Williams' injuries. Hence, they are insufficient to confer specific jurisdiction over Appellant under section 5322.

For each of the foregoing reasons, I would reverse the trial court's order overruling Appellant's preliminary objections.